78 N.J. Super. 67 (1963)
187 A.2d 602
GLENWOOD REALTY COMPANY, INC., PETITIONER,
v.
CITY OF EAST ORANGE, RESPONDENT. CITY OF EAST ORANGE, PETITIONER-APPELLANT,
v.
GLENWOOD REALTY COMPANY, INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1962.
Decided January 10, 1963.
*68 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Jack Okin, Assistant City Counsel, argued the cause for petitioner-appellant (Mr. William L. Brach, City Counsel, attorney).
Mr. Leon S. Milmed argued the cause for repondent, Glenwood Realty Co., Inc. (Messrs. Milmed & Feder, attorneys; Mr. Milmed and Mr. Murray Kempler, of counsel).
Mr. Arthur J. Sills, Attorney General of New Jersey, attorney for respondent, Division of Tax Appeals (Mr. Elias Abelson, Deputy Attorney General, of counsel).
*69 The opinion of the court was delivered by FREUND, J.A.D.
The City of East Orange appeals from a final judgment of the Division of Tax Appeals affirming the reduction by the County Board of Taxation of the original assessment of respondent's real property located at 55 Glenwood Avenue, East Orange, N.J., for the tax year 1959.
The property consists of a plot of land upon which is erected a ten-story apartment house containing 218 apartments. The building was erected in 1952 and was financed under the terms of section 608 of the National Housing Act, 12 U.S.C.A. § 1743, which allows the Federal Housing Authority (FHA) to insure the mortgage up to 90% of construction cost. On the date of appraisal, the balance on the property's FHA mortgage was $1,345,886. The dispute is confined to the assessment against the improvement; the assessment on the land is unchallenged.
The parties have stipulated that the common level of assessment used by the city for the 1959 tax year was 50% of true value. At this level of assessment, the local assessor assessed the improvement at $751,700. The taxpayer alleged discrimination on its appeal to the County Board of Taxation. After a hearing, the board reduced the assessment on the building to $620,700.
Both parties filed cross-appeals with the Division of Tax Appeals. The taxpayer sought a further reduction; and the city, an increase in the assessment. These appeals were heard jointly by a Division commissioner to whom the appeals were assigned. Each party produced a real estate expert. They testified at length concerning their estimates of the property's true value. Their appraisals are made a part of the record.
The taxpayer's expert, Rudolph Kruger, using an income capitalization approach, valued the improvements at $1,034,700 (which would result in a common level of assessment of $517,350). On the other hand, the city's appraiser, Franklin Hannoch, Jr., valued the improvement at $1,494,100 (or $747,050 at the common level of assessment). Hannoch's *70 valuation was predicated upon a study of three approaches to value  "reproduction cost less depreciation, capitalization of net income, and value by the comparative sales basis." He also mentioned a "fourth approach which doesn't appear in here" based upon the "typical investors' approach of a net income consideration." The city, subsequent to this hearing, abandoned reliance upon comparative sales.
Hannoch conceded that a crucial determinant of his valuation of $1,494,100 was the FHA mortgage to which he gave "prime consideration." He continued, "I consider this [his appraisal] to be the market value of the property based on this mortgage." It was his opinion that "608 properties are sold * * * on the basis of their net income, which means that the net income less the deduction for the interest and mortgage insurance, which is held by the F.H.A."
The commissioner's finding of fact and order of judgment extensively reviewed and analyzed the testimony of opposing experts. He concluded that each party had failed to sustain the requisite burden of proof to alter the judgment of the board. Thereupon he dismissed both appeals and affirmed the assessment. On appeal from this determination, the city argues that the Division acted arbitrarily by (1) sustaining the assessment because this sum fails to reflect the balance of the mortgage on the premises as of the assessing date and (2) failing to make an independent finding of value.
The Attorney General, representing the Division, has filed a statement in lieu of brief, expressing the opinion that the merits of the appeal have been fully presented by both parties and that his participation would not be necessary.
In our recent opinion in City of Passaic v. Botany Mills, Inc., 72 N.J. Super. 449 (App. Div. 1962), certif. denied 37 N.J. 231 (1962), the proper standards of review for the present case are fully stated. Since a presumption of correctness exists in favor of the board's judgment, the city as appellant before the Division had the burden of ultimate persuasion to upset the county tax board judgment. The Appellate Division will not resolve conflicting evidence unless *71 the evidence plainly demonstrates that the administrative body has acted arbitrarily. United Hunters Association of N.J., Inc. v. Adams, 36 N.J. 288, 292 (1962).
Cognizant of the presumption of correctness which adheres to the Division's judgment, the city in its brief relies upon North Bergen Twp. v. Dieckmann's Estate, 37 N.J. Super. 221, 223 (App. Div. 1955), which states that this presumption stands until evidence is adduced which is "definite, positive and certain in quality and quantity." The city argues that a review of the record sustains its position that the presumption has been destroyed.
The pivotal question concerns the use of the mortgage in determining true value. The taxpayers' expert flatly rejected any use of the mortgage in his appraisal. He testified that "property is appraised free and clear of all encumbrances." On the other hand, the city's expert  as noted above  regarded the mortgage as a "prime consideration" in his valuation. The importance of the divergent appraisal techniques concerning the mortgage is high-lighted by the similarity of many of the other components used by the appraisers, as follows:

 Taxpayer City
 Gross rental ...................... $242,685 $248,304
 Expenses .......................... 72,742 72,642
 Management expense ................ 3% 5%
 Vacancy factor .................... 5% 3%
 Effective gross income ............ 230,551 240,855
 Effective net income .............. 157,809 168,213

After discussing the testimony and appraisal techniques of the respective experts, the commissioner noted that the city's method of capitalization is more suitable for the purpose of a potential investor than for tax appraisal. The commissioner concluded that:
"This system [offered by the city] fails to result in a standard finding of true value as contemplated by our tax statutes. By the use of this method, it is entirely possible that two buildings adjacent *72 to each other, being identical in all other respects (physically, rental income and expenses), would have a completely different resulting true value merely because one building had a greater mortgage than the other.
I cannot conceive that the legislature intended that true value for tax purposes should be ascertained in this manner."
We agree with the conclusion of the commissioner that reliance upon the mortgage for purposes of valuation would seriously violate an important principle of taxation. As stated in Switz v. Kingsley, 37 N.J. 566, 572 (1962), by Chief Justice Weintraub: "equality in the distribution of the burden of local government upon taxable real property is the basic goal. * * * The thought is that things equal to each other in the context of the local real-property tax involved shall be treated equally." See N.J. Const. Art. VIII, § I, par. 1; N.J.S.A. 54:4-1, 54:4-23.
While market value is evidential of true value, it is by no means the only criterion. Special circumstances may increase or depress market value without affecting its true value or vice versa. Market value to the owner of an encumbered property is not always a proper basis for assessing real property. Borough of Englewood Cliffs v. Estate of Allison, 69 N.J. Super. 514, 525 (App. Div. 1961). See generally, Switz v. Middletown Twp., 23 N.J. 580, 596 (1957). "[T]he general property tax ordinarily pays no attention to these divisions of interest [such as mortgages] and assesses the property as if it were owned in fee simple." Bonbright, "The Valuation of Real Estate for Tax Purposes," 34 Colum. L. Rev. (1934), 1397, 1435.
The city based its appraisal on the mortgage not only in its "typical investors' approach" but also on its "capitalization of net income." The city's appraiser testified that he "capitalized the net income before taxes at 11%, and that gives me $1,494,000 as the building value." This capitalization rate was based on a "band of investment." One of the elements of this "band" was the mortgage which apparently accounted for 3.96% of the total 11% capitalization rate. *73 The commissioner was clearly justified in not relying upon the city's various methods of appraisal based on the FHA mortgage.
The city's final approach to valuation, the cost of reproduction less depreciation, was also erroneous. That approach used a factor of $1.25 per cubic foot for reproduction cost of the building, but the city's expert failed to explain the origin of this figure. Hannoch concededly was neither a builder nor construction expert. He readily admitted that he had never built an apartment house. When asked if the reproduction cost was a factor relevant to the sale of an apartment building, he commented vaguely, "I wouldn't say that it has very little consideration to the value of the property." He then admitted that the primary concern of both the seller and the buyer would be income and expenses. On the basis of this record, the commissioner was justified in finding that the city failed to substantiate the $1.25 per cubic foot reproduction cost and that, in any event, little reliance was placed on this figure by the city.
We have reviewed the testimony and conclude that the findings of the Division are supported by substantial evidence. Absent a showing of palpable error, we will not disturb the judgment under review. City of Passaic v. Gera Mills, 55 N.J. Super. 73, 89 (App. Div. 1959), certif. denied 30 N.J. 153 (1959).
The city also argues as a ground for reversal that the Division did not make an independent finding of value, although it had sufficient competent evidence to do so. In support of this alleged requirement, the city relies upon In re Mutual Benefit Life Ins. Co., 35 N.J. Super. 113 (App. Div. 1955). A careful reading of that case does not support the asserted claim. The opinion merely states that the agency is under a duty to explain the course of its reasoning, a duty which the Division satisfactorily performed in arriving at the final disposition of this case. N.J.S.A. 54:2-16.
Affirmed.