LEONARD ROTHMAN AND MILDRED ROTHMAN, PLAINTIFFS, v. CITY OF HACKENSACK, DEFENDANT.

Tax Court of New Jersey

August 26, 1980.

---

*Robert E. Rothman*, Attorney, for plaintiffs.

*Melvin Gittleman* by *Steven D. Muhlstock*, Attorney, for defendant.

SIMPSON, J. A. D. (temporarily assigned).

Plaintiffs, Leonard and Mildred Rothman, appeal from judgments of the Bergen County Board of Taxation determining Hackensack real property assessments as follows:

Parcel I – 1978 only

| Block | Lots | Assessment | | County Board Judgment | |
|-------|------|------|--------------|------|--------------|
| | | Land | Improvements | Land | Improvements |
| 100 F | 8, 9 & 10 | $25,500 | 0 | $20,000 | 0 |

Parcel II – 1978 & 1979 (same amounts both years)

| Block | Lots | Assessment | | County Board Judgment | |
|-------|------|------------|--------------|-----------------------|--------------|
| | | Land | Improvements | Land | Improvements |
| 114 A | 1 | $138,000 | $100 | $138,000 | $100 |
| 114 C | 1–A, & 3 | 95,400 | –0– | 95,400 | –0– |

Parcel I was vacant land, 75 × 135 feet, or 10,125 square feet fronting on Charles Street and with ⅔ located in a business district and ⅓ in a manufacturing district under the Hackensack Zoning Ordinance. The property was contiguous to other property of plaintiffs, and subsequent to the October 1, 1977 assessment date plaintiffs obtained a variance and during the 1979 tax year constructed a new commercial building thereon.

Parcel II was vacant land consisting of contiguous lots with about 200 feet of frontage on State Highway # 17, and adjacent to other property of plaintiffs in the Borough of Lodi upon which the construction of a large cinderblock building began in 1979.

The cases were consolidated for trial, plaintiffs' son (now an owner–partner with his mother and father of Parcel I) acted as their counsel, and plaintiff Leonard Rothman and Hackensack Assessor John J. Johnson were the only witnesses. As to Parcel I, plaintiffs sought a reduction of assessment to asserted true value of $15,000 and, although no counterclaim was filed, Hackensack sought restoration of the original assessment of $25,500. As to Parcel II, the nominal improvement assessment of $100 for a sign was not disputed, but plaintiffs sought a reduction of the $138,000 assessment to $80,000 and reduction of the $95,400 assessment to $47,000.

## PARCEL I

As of October 1, 1977 all real property in Hackensack was reassessed for tax year 1978 and the Bergen County Board of Taxation equalization table for 1978 determined that the real property ratio of aggregate assessed to aggregate true value

was 96.07%. The assessor used a "set value" of $2.50 per square foot in assessing vacant land in the "general area" of this parcel and his $25,500 valuation was reached by multiplying $2.50 × 10,200 square feet. The correct figure should have been $25,300 (rounded from $25,312.50) since the area was 10,125 square feet. He made no adjustment for any influence factors, but did not dispute plaintiff's testimony that the land sloped to an extent requiring fill before a building could be constructed thereon. He stated, however, that the slope was consistent with the general area. Leonard Rothman (testifying as an owner, attorney, investor, and appraiser) asserted a $15,000 value–the approximate purchase price eight or ten years prior, and the same figure determined by the county tax board for tax year 1973 when it reduced the assessor's $20,400 valuation. The 1978 tax board $20,000 figure is approximately $2.00 per square foot and Mr. Rothman's about $1.50. Both witnesses cited other properties as "comparables" or showing "discrimination", but I find them of little value in determining the true value of Parcel I. Johnson's four sales in 1975 and 1976 were at $3.93 to $4.60 per square foot and Rothman's were not sales, but merely comparative assessments at the same $2.50 per square foot figure for allegedly superior parcels.

Johnson's assessment method fails to distinguish between property valuation differences due to influence factors such as frontage, depth, shape, size, topography and location. *Real Property Appraisal Manual for New Jersey Assessors* (Third Edition, 1978) I–31 to I–62. The problem with Rothman's "appraisal" is that his valuation was merely a 40% reduction from the "set value" or $1.00 per square foot to make his property "comparable" to others assessed at $2.50 per square foot. Although the assessor's methodology leaves much to be desired, plaintiffs asserted true value of $15,000 was unsupported and the proof of comparative assessments is inadequate to sustain a claim of discrimination. *Greenwald v. Borough of Metuchen*, 1 *N.J.Tax* 228 (1980). The evidence was in a state of equipoise and neither side overcame the presumption of correct-

ness of the county board judgment with the required quality and quantity of proofs. *Passaic v. Gera Mills,* 55 *N.J.Super.* 73, 150 *A.2d* 67 (App.Div.1959), certif. den. 30 *N.J.* 153, 152 *A.2d* 171 (1959). It is clear that, in view of the presumption, an appellant before the Division of Tax Appeals had "the burden of ultimate persuasion to upset the county tax board judgment." *Glenwood Realty Co., Inc. v. East Orange,* 78 *N.J.Super.* 67, 70, 187 *A.2d* 602 (App.Div.1963). The presumption is similar to the presumption of correctness of tax assessments on appeal to the county tax board, with an appellant having the burden of proof of overcoming the presumption with sufficient competent evidence that "must be definite, positive and certain in quality and quantity to overcome the presumption". *Aetna Life Insurance Co. v. City of Newark,* 10 *N.J.* 99, 105, 89 *A.2d* 385 (1952). These same principles of course apply in the Tax Court. *N.J.S.A.* 2A:3A–27.

This state of the evidence is to be distinguished from the situation in *Samuel Hird & Sons, Inc. v. Garfield,* 87 *N.J.Super.* 65, 208 *A.2d* 153 (App.Div.1965) where affirmance of county board judgments by the Division of Tax Appeals produced anomalous results in successive years. There the presumption was overcome and substantial and competent evidence enabled determination of true value and fixing of a common assessment based upon a suitable equalization factor. In this case, as to Parcel I, plaintiffs had the burden of proof that the county board judgment was too high and defendant the burden of proof that it was too low. Defendant had the burden of ultimate persuasion in its attempt to seek restoration of the original assessment pursuant to *Rek Investment Co. v. City of Newark,* 80 *N.J.Super.* 552, 194 *A.2d* 368 (App.Div.1963) and *Bor. of Matawan v. Tree Haven Apartments, Inc.,* 108 *N.J.Super.* 111, 260 *A.2d* 235 (App.Div.1969), just as plaintiff–appellants had the burden in seeking decrease of the county board judgment pursuant to *Glenwood Realty Co., Inc. v. East Orange, supra.* The evidence being in a state of equipoise on the ultimate issue of

true value, neither carried the burden by a preponderance of the credible evidence and this court accordingly adopts or affirms the $20,000 assessment fixed by the Bergen County Tax Board.[1]

## PARCEL II

Although the evidence introduced by both sides was more extensive than that pertaining to Parcel I, it suffered from the same infirmities. The assessment was at $2.25 per square foot applied to all land in the general area despite obvious differences in property valuations due to influence factors such as those noted in the above discussion as to Parcel I. Much of the evidence compared plaintiffs' property with that of an adjacent property owner, Sanzari. Hackensack sewers were not immediately available to the Rothman tract as they were for the Sanzari land. Additionally, the Rothman property had Stink Creek crossing it, whereas Sanzari's lands were not so afflicted. There was also some evidence of flooding conditions and less highway frontage than possessed by the Sanzari lands. Both sides produced alleged "comparables" from other areas of Hackensack, but none were of any value in determining the true value of the properties under appeal.

Rothman's opinion was that the Block 114A property should be assessed at $1.25 per square foot or $80,000 and the rear lands in Block 114C at $1.10 per square foot or $47,000. The only basis, however, was a percentage reduction from the $2.25 rate applied to the Sanzari tract and a somewhat greater reduction for the lots not fronting on Route 17. Just as in the case of Parcel I, the comparative assessments are inadequate to support the claimed discrimination. *Greenwald v. Borough of Metuchen,*

[1]The Tax Court hears and determines appeals from county tax board judgments that formerly were heard in the Division of Tax Appeals, *N.J.S.A.* 2A:3A–3, and these are trials *de novo. N.J.S.A.* 2A:3A–4. Effective January 1, 1980 *N.J.S.A.* 54:3–14 requires recording of such tax appeal proceedings and *N.J.S.A.* 54:3–26 requires written memoranda of judgments with reasons therefor.

*supra.* Although the assessor's methodology suffers the noted infirmities, the only ratio study cited by either side was the 96.07% aggregate assessments to aggregate true value for Hackensack in the Bergen County Tax Board equalization table for 1978. Although at one point Mr. Rothman testified to "valuations" of $80,000 and $47,000 for the two parcels, it was clear that he was simply making a percentage reduction from the $2.25 rate applied to the "general area" including the Sanzari tract. I find there was no credible evidence that the assessments exceeded the fair market value of these lots on the respective assessment dates, and there were insufficient proofs to sustain discrimination claims. The true value of these lots was not proven, nor any evidence offered that the ratio of the assessed valuations to true value exceeded or fell below the upper or lower limit of the common level range to require revision of the taxable value pursuant to *N.J.S.A.* 54:4–62 and 54:1–35a.

There was also a claimed error in the number of square feet to which the $2.25 multiplier was applied. A boundary dispute between Rothman and Sanzari resulted in a law suit that was ultimately settled and Rothman claimed a loss of 2,081.44 square feet. A settlement deed indicates, however, that 816 square feet were acquired by plaintiffs; but in any event the Deed was not recorded until November 6, 1978 and hence would not be applicable to the 1979 tax year which is based upon an October 1, 1978 assessment date. Additionally, it is customary for an assessor to make his assessments on the lots as shown on the district tax map as of the October 1st assessment dates. In summary, the quality and quantity of plaintiffs' evidence as to valuation and discrimination is insufficient to overcome the presumption of correctness of the county board judgments as to Parcel II.

Accordingly, as to both parcels, judgments will be entered for the years and in the amounts hereinabove set forth under the headings for county board judgments.