EVERS, J.T.C.
In these local property tax matters Herman Holding Corp. (taxpayer) appeals from judgments of the Bergen County Board of Taxation which affirmed the assessments for the years 1979, 1980 and 1981 on property known as 295 West Grand Avenue, Montvale (borough). In addition to claiming overvaluation, taxpayer seeks relief from alleged discriminatory assessments notwithstanding that a revaluation was effective for 1979. Taxpayer claims the ratio of assessments to true value were substantially greater than the common level of assessments based on an unweighted, unclassified ratio. The assessments for each year were $531,200 (land $168,100 — improvements $363,100).[1]
Briefly, the site is described as irregularly shaped, containing 2.46 acres and at street grade. All usual utilities are available and in use. It is improved with a one-story structure containing a total floor area of 20,300 square feet, of which 4,000 are used for office purposes and 16,300 are devoted to warehouse use. The building, which was constructed in 1965, with 9,800 square feet added in 1973, is generally rectangular and built on a concrete slab with no basement.
The resolution of such controversies initially requires a determination of which one or more of the three traditional valuation approaches may be most reliable under the circumstances. While there is no single doctrinaire approach to the valuation of real property, in certain instances one approach may predomi *202 nate. In Parkview Ass’n v. Collingswood, 62 N.J. 21, 297 A.2d 842 (1972), it was held that the income approach was most appropriate in the valuation of an income-producing apartment, and in Buchler v. Fort Lee, 2 N.J.Tax 228 (Tax Ct.1981), for establishing the value of a structure used for light manufacturing-industrial purposes. Because of the unique structure involved in Whippany Associates v. Hanover Tp., 1 N.J.Tax 325 (Tax Ct.1980), the cost approach was found to be the most reliable indicator of value. On the other hand, the use of the market data approach is deserving of considerable weight, providing there are substantial similarities between the properties so as to admit of reasonable comparison. Venino v. Carlstadt, 1 N.J.Tax 172 (Tax Ct.1980). In certain cases the purchase price of a property may be controlling, although it is generally regarded as a “guiding indicium” of value. Hackensack Water Co. v. of Tax Appeals Div., 2 N.J. 157, 65 A.2d 828 (1949).
In the instant matter the respective expert witnesses relied on the income approach in estimating value. I find such approach to be most reliable in this case. “In valuing income-producing properties it is an accepted fact that a prospective purchaser’s primary concern is with the anticipated return on his investment and not with the cost of construction or the purchase price for which similar properties may be sold.” Parsippany Hills Associates v. Parsippany-Troy Hills, 1 N.J.Tax 120, 122-123 (Tax Ct.1980). The sales price of like structures means comparatively little to an investor if the property does not provide an adequate return to justify the sales price. Parkview Ass’n v. Coliingswood, supra. The logical justification for the income approach to value is the
.. . common knowledge that a prospective investor in realty expects a fair return upon any investment he makes, and, before investing, studies the income history of the property and considers its income producing potentiality. [Annotation, “Income Or Rental Value As A Factor in Evaluation Of Real Property For Purposes of Taxation,” 96 A.L.R.2d 666, 669 (1964) ]
In the valuation of real property for local taxation “[t]he search, of course, is for the fair value of the property, the price a willing buyer would pay a willing seller.” New Brunswick v. Tax Appeals Div., 39 N.J. 537, 543, 189 A.2d 702 (1963). Adher *203 ence to objective standards for determining true value is required by N.J. Const. (1947), Art. VIII, § I, par. 1, as well as by N.J.S.A. 54:4-23. It was observed in Fort Lee v. Hudson Terrace Apts., 175 N.J.Super. 221, 226, 417 A.2d 1124 (App.Div. 1980), certif. den. 85 N.J. 459, 427 A.2d 559 (1980), that “the focus must be on the value of the property in the market place, without regard to the particular or peculiar circumstances of the owner.” Regardless of the approach relied on, however, paramount to the court’s decision is the well settled principle of law that the decision must be supported by competent evidence. On appeal to the county tax board the assessment made by the local taxing authority is presumed to be correct. On further appeal to the Tax Court a similar presumption attaches to the county board judgment. Thus, in the instant appeal the taxpayer-appellant has the burden of ultimate persuasion to upset the judgments of the Bergen County Tax Board for the years 1979, 1980 and 1981. See Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 89 A.2d 385 (1952); Riverview Gardens v. North Arlington, 9 N.J. 167, 174-175, 87 A.2d 425 (1952); Glenwood Realty Co. v. East Orange, 78 N.J.Super. 67, 70, 187 A.2d 602 (App.Div. 1963).
As the court noted in Aetna Life Ins. Co. v. Newark,
.. . The settled rule is that there is a presumption that an assessment made by the proper authority is correct and the burden of proof is on the taxpayer to show otherwise. L. Bamberger & Co. v. Division of Tax Appeals, supra (1 N.J. [151] at p. 159 [62 A.2d 389]). And the taxpayer has not met this burden unless he has presented the appellate tribunal with sufficient competent evidence to overcome the presumption, that is, to establish a true valuation of the property at variance with the assessment. Riverview Gardens v. North Arlington Borough, 9 N.J. 167, 175 [87 A.2d 425] (1952). [10 N.J. at 105, 89 A.2d 385]
And, only when the presumption is overcome does it become incumbent upon the Tax Court to appraise the testimony, make a determination of true value and fix the assessment. Cf. Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 75, 208 A.2d 153 (App.Div.1965); Rek Investment Co. v. Newark, 80 N.J.Super. 552, 557, 194 A.2d 368 (App.Div.1963).
Having determined that the income approach provides the most reliable indicator of value, it becomes the task of the court to analyze the reasoning of the witnesses and the facts and *204 support on which their conclusions are based. In this approach the analysis entails an examination of the income and expense items, as well as the development and application of a rate of capitalization of the effective net income (effective gross income less expenses, excluding real estate taxes), keeping in mind the warning of Chief Justice Weintraub in New Brunswick v. Tax Appeals Div., supra, wherein he stated:
. .. Although capitalization of income is an acceptable approach, it is beset with so many debatable incidents that it should not lightly be accepted as the single solvent of a quarrel over assessment. Generally it is well to measure its results against other known data and the common sense of the situation. [39 N.J. at 551, 189 A.2d 702]
For the reasons hereafter stated, I find that taxpayer did not sustain its burden of proof and thus the complaints must be dismissed.
In analyzing an income approach to value, the court’s initial concern must be with whether the income used by the expert represents economic income. Economic rent is the “rental warranted to be paid in the open real estate market based on current rentals being paid for comparable space.” American Institute of Real Estate Appraisers, The Appraisal of Real Estate (7 ed. 1978), at 325. There is no doubt that economic rent or fair market rental, if it differs from actual or contract rent, must control. New Brunswick v. Tax Appeals Div., Parkview Village Ass’n v. Collingswood, supra.
The proofs submitted by the taxpayer consisted of the testimony of an appraisal expert and his written appraisal report. The witness concluded that the economic rent of the property was the lease rent paid by a tenant (Lettie Press, Inc.) which occupied approximately 20% of the building. With respect to the remaining 80%, which was occupied by the owner, an alleged economic rent was established by discounting the tenant’s rent by 10%. The discount was justified because, based on his experience, it was the expert’s opinion that larger areas command a lesser rent on a square foot basis. No other leases or comparable properties were examined or testified to in support of the conclusion that the Lettie lease rent represented *205 economic rent. The following colloquy from the direct examination of the witness, it being the only reference to economic rents in the record, illustrates the lack of support for his conclusion.
Q. Would you tell how you arrived at your valuation in employing the economic approach and your conclusions in that respect. Before doing so, would you tell us whether or not you’ve employed in your calculations the actual rent as reflected in the Lettie Press lease or did you employ another form of methodology in order to determine the economic rent of the subject property?
A. Yes. On page 10 I’ve just outlined the general terms of the Lettie Press lease.
Q. Did you consider that to be an economic and fair rental for the property as of the taxing dates in question?
A. Yes I do.
Q. Did you apply that as your basis for your determination of value? A. Yes I did.
Q. Will you proceed with your determination and analysis commencing on page 10?
A. Yes. On page 10 is the outline of the terms that I just read to the court from the lease. On page 11 I took into consideration that the rent was a fair economic rent — an arms length lease representing fair market rental of that portion of the subject space. Therefore the lease was 11/1/78 which coincided almost directly with the assessment date of 10/1/78 for the tax year 1979. Therefore for the leased area I adopted the contract rent of $3.38 as equivalent of the economic rent of that space. The owner occupied area again is very comparable to that except larger. It is approximately almost SV2 to 4 times as large. Therefore I made an adjustment for size. I adjusted downward for size. Ten percent adjustment... .[2]
Clearly, taxpayer’s conclusion that the lease rent represented economic rent is without support. The use of that rent is undermined further in applying it to 80% of the premises after discounting it by an arbitrary 10% which is also without support. As is pointed out in The Appraisal of Real Estate, supra:
The starting point in a gross income projection is the record of actual gross income from the property in past years and the current income schedule. This historic and current factual data provides a basis from which a projection of estimated future gross income may be developed. However, this projected gross income estimate for appraisal purposes may be quite different from actual past or current figures. In the review and analysis of the factual data, comparison is *206 made with known rentals for similar space in the same or comparable locations. This analysis leads to an informed estimate of the probable prospective income from the property and the degree of risk involved in its realization, [at 325]
It may very well be that there are no leases of properties in the market area of the subject that are sufficiently comparable so as to admit of reasonable comparison. It may well be that the extent of adjustments required due to the differences between properties are so great as to render such other leases useless after applying the comparability test. It may well be that under those circumstances resort must be had to leases from other areas or to other valuation approaches or, in the final analysis, to the contract rent itself. The court is cognizant that mathematical precision in the valuation of property is neither attainable nor required. Baldwin Constr. Co. v. Essex Cty. Bd. of Tax., 16 N.J. 329, 108 A.2d 598 (1954). In this instance the court is not critical of the lack of precision of taxpayer’s conclusions but rather of the total lack of support, and the expert’s lack of effort to find such support, for those conclusions.
While my determination that the basic premise for taxpayer’s conclusion is faulty requires no further consideration of its proofs, I do note the following. The Lettie lease required participation by the tenant to the extent it paid approximately 4% of the real estate taxes and insurance premiums. It was suggested by borough that a typical lease in these circumstances requires full participation as to those expenses by a tenant. Neither party presented any proofs pro or con that proposition. However, if such were the case it is at least probable that either the income would be increased or the real estate tax portion of the capitalization rate would be reduced proportionately.
I further note that taxpayer deducted a management expense of 5% (of effective gross income), reserves of 3% and miscellaneous expenses of 1%. The sole support for these deductions was his opinion, based on his experience. In Buchler v. Fort Lee, supra, it was stated:
*207 No effort was made to establish this rent on the basis of comparable leases. The main support for the use of $3 per foot came from his general knowledge of rents in Fort Lee. The witness’s familiarity with Fort Lee properties is not doubted. That familiarity and experience, however, should have been reduced to concrete facts and made part of the record. It was not and without such data I can give no weight to his opinion. For the same reason, i.e., no supporting data, no weight is accorded to his opinion that the lease rent did not represent economic rent because the premises were not being used to their greatest potential. Based on that reasoning the same may be said of the many borough properties that are not used for multi-residential or commercial purposes. Such reasoning is frought with speculation, finds no support in the record and is unacceptable, [at 235]
I further note that the interest portion of taxpayer’s capitalization rate was based primarily on the average interest rates charged by 20 insurance companies during the periods surrounding the assessment dates. Without more, the reliability of such material was rejected in Murnick v. Asbury Park, 2 N.J.Tax 168 (Tax Ct.1981), rev’d on other grounds 187 N.J.Super. 455, 455 A.2d 504 (App.Div.1982), where it was said:
The validity of the supporting material relied upon by city’s expert depends upon the accuracy of the basic interest rate and capitalization rate information as applied to the location of the subject. The source information was obtained from 15 life insurance companies located and doing business throughout the entire United States. Such published data is subject to considerable differences in interpretation. The information published by national organizations is not always drawn from properties comparable to the subject. They may not account for locational difficulties extant in a particular community. The data may apply to properties that may not be typical of the property involved in a local property tax proceeding.
Such published statistical material may be useful as a comparison check but is not persuasive without a showing that the subject fits the same category, [at 187]
I lastly note that, although employing the building residual technique of income capitalization in which the land is valued separately, American Institute of Real Estate Appraisers, The Appraisal of Real Estate, supra at 403, taxpayer’s conclusion of value was without valid support, as illustrated by the following direct testimony:
Q. Incidentally, how did you arrive at your land values? Did you merely adopt the municipal valuation of the land, which I notice is slightly lower than yours — at $168,100; did you do that on the basis of your expertise and knowledge as to the going price of land in that area?
*208 A. Based on my knowledge of the going price of land in the area. I have done other appraisals in Montvale. I am familiar with some sales that took place in the area and it is my opinion that the $70,000 per acre would also represent the fair market value of the land.
In summary, I find that taxpayer’s testimony fell far short of sustaining its burden. No factual bases were given in support of the expert’s conclusions. An expert’s opinion rises no higher than the data on which it is founded. Passaic v. Gera Mills, 55 N.J.Super. 73, 150 A.2d 67 (App.Div.1959), certif. den. 30 N.J. 153, 152 A.2d 171 (1959). Where an expert gives an opinion of value based on his general experience without supporting such value by specific objective data, his opinion is not entitled to any probative value. Berkeley Develop. Co. v. Berkeley Heights Tp., 2 N.J. Tax 438 (Tax Ct.1981); Inmar Associates, Inc. v. Edison Tp., 2 N.J.Tax 59 (Tax Ct.1980). See, also, Passaic v. Gera Mills, supra (the opinion of an expert depends upon the facts and reasoning which form the basis of that opinion); Wright v. Purepac Corp., 82 N.J.Super. 100, 196 A.2d 695 (Cty. Ct.1963) (the judiciary and fact-finding bodies are not bound by the opinions of expert witnesses); Middlesex Cty. v. Clearwater Village, Inc., 163 N.J.Super. 166, 394 A.2d 390 (App.Div.1978), certif. den. 79 N.J. 483, 401 A.2d 239 (1979) (an expert’s opinion may be adopted in whole or in part, or completely rejected).
Since no competent proof of valuation was submitted by taxpayer, the issue of discrimination need not be discussed. Continental Paper Co. v. Ridgefield Park, 122 N.J.Super. 446, 300 A.2d 850 (App.Div.1973).
The complaints are dismissed. Judgments will be entered as follows:
1979, 1980, 1981
Land
Improvement
Total
$168,100
363,100
$531,200

Taxpayer’s reliance on the unweighted, unclassified ratio, at least with respect to 1980 and 1981 is misplaced in view of Murnick v. AsburyPark, 187 N.J.Super. 455, 455 A.2d 504 (App.Div.1982), wherein, when warranted, the application of the chapter 123 ratio (N.J.S.A. 54:l-35a and N.J.S.A. 54:2 40.1) was held to be mandatory and exclusive. No proofs were submitted here which would justify the use of a ratio other than that prescribed by chapter 123. Chapter 123 relief is not available in the year of a revaluation, here 1979.

Borough’s expert witness, on cross-examination, referred to at least one other lease in Montvale which he considered to be comparable.