SMALL, J.T.C.
These nineteen tax appeals are before me on remand from the Appellate Division of the Superior Court “for reconsideration of the trial testimony.”
For the tax year 1993, each of the nineteen named defendants appealed the tax assessment on his or her residence in the Township of Nutley to the Essex County Board of Taxation. It appears that the testimony before the county board was perfunctory. Mr. Pandolfi, the municipal superintendent of parks and superintendent of recreation of the Township of Nutley testified that he was present at the hearing before the Essex County Board of Taxation, no appraiser or real estate broker appeared for the plaintiffs, and no market data was presented to the county tax commissioner hearing the matter. It appears that what the county board heard were the complaints of the taxpayers about the increased traffic, noise, litter, parking, and other activities in their neighborhood, resulting from the construction and opening of the creative playground in Nichols Park, which is adjacent to their *307 homes. The record before the county board is not before me, is not evidence in these cases, and is irrelevant as a matter of law, because the proceeding in the Tax Court is a trial de novo. N.J.S.A. 2B:13-3b. Nevertheless, what appears to have taken place is recited in order to give a complete picture of the history of the appeals of these assessments. At the conclusion of the county board hearing, the commissioners issued judgments reducing the tax assessments on each of the nineteen appealed properties by 10%. These actions are summarized in the table which constitutes the appendix to this opinion.
Nutley filed nineteen separate complaints in the Tax Court of New Jersey challenging each of the nineteen county board judgments. At the conclusion of the bench trial, I affirmed each of the nineteen judgments of the Essex County Board of Taxation, not because I found that the county board’s decisions were correct, but because I found that the plaintiff, Township of Nutley, had failed in each of the nineteen cases to meet its burden of proof by showing that the quantum of each of the nineteen reduced assessments ordered by the county board was wrong.[1]
Nutley took a consolidated appeal from the nineteen Tax Court judgments. In an opinion dated October 11, 1996, the Appellate Division found that the presumption of correctness of the Essex County Board of Taxation judgments had been properly rebutted, reversed those nineteen judgments, and remanded the matter to this court “for reconsideration of the trial testimony.” This is my opinion on remand.
*308 I.

The Evidence Before The Tax Court

The trial testimony before this court described, in detail below, centered on: (1) the construction and subsequent use of the creative playground and, in particular, what the taxpayers and the municipality viewed as its impact on their neighborhood; (2) the fact that the Essex County Board of Taxation had heard no valuation testimony; (3) the fact that the county board action in reducing the assessments by 10% was not consistent with certain paired sales data; and (4) the conflicting opinions of the plaintiff municipality’s, and the defendants homeowners’ experts that the creative playground either had no impact on the value or reduced the value of the properties which are the subject of this appeal. On the key piece of evidence in any real property tax appeal, the value of the subject property (in this case, nineteen properties) on October 1st of the pre-tax year, there was absolutely no evidence. See Rabstein v. Princeton Tp., 187 N.J.Super. 18, 22, 453 A.2d 553 (App.Div.1982) (citations omitted) (stating that on appeal to the Tax Court from a local property tax assessment, it is the function of the Tax Court to conduct a de novo hearing in which the ultimate fact sought to be determined is the full fair value of the property). The testimony of the only two witnesses qualified to give an opinion of value is clear. Mr. Marashlian, the municipal expert, testified:
Q I take it you were not asked and therefore you don’t have an opinion on the specific values of the properties under appeal.
A I have no knowledge of any of the properties under appeal. I didn’t make a specific appraisal of any property.
Mr. Bate, the defendants taxpayers’ expert testified:
Q Okay. And at the time you were retained in order to make your observations and give your opinion with regard to this park, what was asked of you with regard to that job? What job were you asked to perform?
A Well, as the record show [sic], the case was heard before the Essex County Board of Taxation, they rendered a decision reducing the assessed valuations on all properties involved, 10 percent of assessed valuation. I was asked to come in and sort of review the judgments issued by the County Board of Taxation and asked in my opinion whether or not I felt the reductions were justified, if they were fair, and that’s what I did.
*309 Q Okay. What was your conclusion with regard to your review of the value of the homes subject to this appeal?
A Well, in my opinion, the majority of them were — I thought were reasonable.
[ (Emphasis added).]
When asked whether he had done a full appraisal with respect to each of the 19 properties, Mr. Bate replied:
“No, your honor, we did not.”
The experts expressed no independent opinion of the fair market value of the nineteen subject properties (see appendix). Their only opinion was of the impact of the creative playground and whether it was appropriate for the Essex County Board of Taxation to have made adjustments to the original assessments based on the opening of that playground.
The plaintiff called four witnesses: Thomas A. Pandolfi, the superintendent of parks of the Township of Nutley; Louis Constantine, a real estate broker active in Nutley; Richard Marashlian, the municipal appraisal expert; and Joseph F. Reilly, the tax assessor of the Township of Nutley and the defendant in one of the nineteen eases before me. Mr. Pandolfi testified at length about the planning and construction of the creative playground in 1992, about the town’s efforts to deal with the parking and other problems created by the increased traffic resulting from the opening of the playground, about what happened at the county board hearing, and about the general level of upset of the neighbors because of the increased traffic resulting from the opening of the playground. He indicated that, although the traffic was substantial on the opening of the playground, it has declined somewhat. He also indicated that a parking problem was created. Mr. Constantine testified principally about the sale of a property at 46 Funston Place, the sale of which was intended to close on August 1, 1995, after the trial, for $147,000. Although not an expert appraiser, he testified that the park had no influence on the value of the houses in the neighborhood and that there has been a steady decline in values in Nutley since 1987. He also testified that “I wouldn’t want to live in Joe’s house,” meaning the house of Mr. Reilly, the assessor, which is near the park.
*310 Mr. Marashlian indicated that he was engaged by Nutley to evaluate the impact of the creative playground on the value of the surrounding properties. He found that there was no negative impact on those values. He indicated that, in general, parks were amenities. He examined in particular the sale of two properties to see whether there was any consequence with respect to the value of nearby houses after the opening of the creative playground. The property at 10 Funston Place sold in January of 1986 for $139,000, and again in November of 1992 for $156,000. The property at 44 Funston Place sold in December 1986 for $165,000, and in June 1993 for $182,000. Based on these paired sales, Mr. Marashlian concluded that there should be no negative adjustment as a result of the opening of the park in 1992.
As a matter of logic, Mr. Marashlian’s conclusion is not necessarily supported by the data. First, it appears that the property at 10 Funston Place was substantially improved between the two sale dates. Second, in each case, the initial sale was more than five years before the opening of the creative playground. It is possible that the value of those two properties increased radically up to the date of the opening of the creative playground, and then dropped radically to a value somewhat greater than the 1986 sale price after the opening of the playground. I find that, although Mr. Marashlian analyzed that data to indicate that the park had no impact on property values, that is not a proper inference to be drawn in either logic or law. He could, and did, conclude that, from 1986 to the date of the second sale of each property, their values increased. I find his conclusion that the opening of the park had no influence on value is not a conclusion that is supported by this data. There was a five-year period between each of the two paired sales. During that time period the values of real estate were influenced by many factors; the opening of the creative playground was only one of these factors.
Mr. Reilly testified that the 1993 assessment roll was essentially a carryover from the 1977 assessment roll. For each year after 1977, assessments were carried forward unless there had been physical changes to the subject property or zoning changes effect *311 ing the subject. He testified that no changes had been made to any of the assessments on the nineteen properties as a result of the construction of the creative playground because there viras no physical change to the nineteen properties or any zoning change effecting the nineteen properties.
The defendants presented three witnesses: Mr. Halter, one of the taxpayer defendants; Ms. McGowan, another of the taxpayer defendants; and Mr. William Bate, the taxpayers’ expert. Mr. Halter testified as to the increased activity resulting from the opening of the playground with respect to noise, parking, and litter. Ms. McGowan’s testimony was similar; she emphasized the problems of trespass, illegal parking, and blocked driveways. I find that there clearly was increased traffic, litter, parking problems, and noise resulting from the opening of the playground.
Mr. Bate, the taxpayers’ expert, testified that there were many complaints with regard to the increased activities as a consequence of the opening of the playground. He testified that although he might not have made the full ten percent adjustments that the county board made, he might make adjustments of five percent to some of the properties that were further distant from the park. He testified, as had Mr. Marashlian, that there were very few sales in the vicinity of Nichols Park, and therefore, it was not possible to do a full market analysis in order to make a determination with precision as to the effect of the opening of the creative playground. His ultimate conclusion was that the creative playground had depreciated the value of the houses near it. His report, submitted in evidence, reflects five percent, ten percent, and fifteen percent downward adjustments to the assessments of the nineteen properties under consideration based on their distance from the park. He gave no opinion of the fair market value of any of the nineteen properties on October 1,1992. He also gave clear evidence, and I find as a matter of fact, that the property at 10 Funston Place, used as a comparable sale by Mr. Marashlian to show no decline in value as a result of the opening of the creative playground, had substantial improvements between the two dates of sale. The improvements caused an increase in *312 value. The amount of the increase in value attributed to the improvements and the effect on value of the opening of the creative playground cannot be determined by a simple paired sales analysis.
Mr. Marashlian opined that the assessments based on a 1977 revaluation were good and should not be disturbed. Mr. Bate opined that the assessments based on a 1977 revaluation should be reduced by five percent, ten percent, or fifteen percent, depending on the distance of the property from the park. The 1992 assessments in Nutley were only a fraction of fair market value. For 1992, the chapter 123 ratio for Nutley was 27.69%. N.J.S.A. 54:51A-6 (L.1973, c. 123). Thus, testimony with regard to assessments is not evidence of fair market value, and without evidence of fair market value, this court cannot revise an assessment. Rabstein, supra.
I have carefully scrutinized the testimony and the reports of the two experts who testified in the case. Nowhere do I find an opinion of the fair market value of even one of the nineteen properties for which I am directed to find value. There is no way to find value from this record. Where neither party offers an opinion of value, I cannot find one. Tax Court judges are presumed to have expertise in tax matters. N.J.S.A. 2B:13-6(b). But that expertise does not extend to finding value when neither party has offered an opinion of value. To suggest that nineteen assessments should not be disturbed or that nineteen assessments should be adjusted by five percent, ten percent, or fifteen percent is not the same as offering an opinion of value.
Based on my examination and reconsideration of the trial testimony, I find that:
(a) There is no evidence on which I can make a determination of the fair market value of any of the nineteen properties on October 1, 1992. No evidence of value was offered. The only evidence which was offered was whether there was a change in value ¡from an unknown base. As a matter of logic and law, even a known change from an unknown base leads to an unknown.
(b) The evidence is inconclusive as to whether the opening of the creative playground caused a decline in the value of the nineteen subject properties or had no effect on their value.
*313 (e) Even if the evidence is sufficient to support a finding that the opening of the creative playground caused each of the nineteen subject properties to decline in value, there is not sufficient evidence to quantify that decline in value with respect to any of the nineteen separate properties. Mr. Bate’s opinion with respect to that issue is a net opinion supported by no data and based solely on his experience.
One further argument is that the parties implicitly stipulated that the values of each of the nineteen properties prior to the opening of the creative playground were reflected in the original assessments, and that in Nutley’s appeals from the county board judgments the burden of proof is still on the taxpayers to show that values declined on the opening of the creative playground. I find no evidence of such a stipulation in the record. I find no proof of value in the record.
In short, the factual evidence in this case cannot support a finding of the value of any of the nineteen subject properties on October 1, 1992. Given that failure of proof, in fact the failure of either party to offer any proof of value, the ultimate resolution of this case turns on the proper application of the law. There are only two possible conclusions: the assessment of each property must be restored to the original assessment, or the appeals of Nutley from the reduced assessments ordered by the Essex County Board of Taxation must be dismissed.
II.

The Law on Presumption of Correctness

The law on the presumption of correctness of tax assessments in tax appeal proceedings is stated in Aetna Life Ins. Co. v. City of Newark, 10 N.J. 99, 89 A.2d 385 (1952):
The settled rule is that there is a presumption that an assessment made by the proper authority is correct and the burden of proof is on the taxpayer to show otherwise. L. Bamberger & Co. v. Division of Tax Appeals, supra [1 N.J. at 159, 62 A.2d 389], And the taxpayer has not met this burden unless he has presented the appellate tribunal with sufficient competent evidence to overcome the presumption, that is, to establish a true valuation of the property at variance with the assessment. Riverview Gardens v. North Arlington Borough, 9 N.J. 167, 175 [87 A.2d 425] (1952). In other words, it is not sufficient for the taxpayer merely to introduce evidence: the presumption stands until sufficient competent evidence is adduced to prove a true valuation different from the assessment. Such evidence *314 must be definite, positive and certain in quality and quantity to overcome the presumption. Central R.R. Co. of N.J. v. State Tax Dept., 112 N.J.L. 5, 8 [169 A 489] (E. & A1933).
[Id. at 105, 89 A.2d 385.]
The same rule expressed in Aetna also applies to the presumption of correctness to be accorded to county board judgments. See Byram Tp. v. Western World, Inc., 111 N.J. 222, 235, 544 A.2d 37 (1988) (stating that “[w]hile a municipality’s original assessment is entitled to a presumption of validity, this presumption attaches to the assessment of the county board when it is the determination of that body that is challenged before the Tax Court”);[2] Riverview Gardens v. North Arlington Bor., 9 N.J. 167, 175, 87 A.2d 425 (1952) (holding that “[t]he weight of the presumption so accorded the assessment or the judgment of the county board is overcome where, on the hearing de novo on appeal, the appellate tribunal is presented with sufficient competent evidence to determine the true valuation of the property”); see also Glenwood Realty Co., Inc. v. City of East Orange, 78 N.J.Super. 67, 70, 187 A.2d 602 (App.Div.1963); (holding that municipal appellant has burden of upsetting county board judgment); City of Passaic v. Botany Mills, Inc., 72 N.J.Super. 449, 454, 178 A.2d 657 (App.Div.1962) (holding that presumption in favor of county board judgment stands until sufficient competent evidence introduced); City of Passaic v. Gera Mills, 55 N.J.Super. 73, 88, 150 A.2d 67 (App.Div.1959) (same).
In this case, the Appellate Division has found that the Township of Nutley has overcome the presumption of correctness of the county board judgments. Nutley’s burden of production of evidence on this issue has been eliminated. Yet on remand, this court is unable to determine a value of the nineteen properties under appeal.
*315 This court may not review the rationale underlying the determination of the county board of taxation. Such an approach is inconsistent with our Supreme Court’s decision in Pantasote Co. v. City of Passaic, 100 N.J. 408, 495 A.2d 1308 (1985), which reviewed the affirmance of a county board judgment (although the Court referred to the assessment) by the Tax Court:
We agree with the Tax Court that the assessment methodology used by the municipal tax assessor was incorrect. See Newark v. West Milford Tp., 9 N.J. 295 [88 A.2d 211] (1952); In re Kresge-Newark, Inc., 30 N.J.Super. 489 [105 A.2d 12] (App.Div.1954). Consequently, the evidence of the municipality would itself have been insufficient as an independent basis for determining the trae value of the property. However, absent any strong indication arising from the evidence properly before the Tax Court that the quantum of the assessment was far wide of the mark of true value, inadequacies in the municipality’s evidence or deficiencies in the assessment methodology will not impugn the presumption of validity that attaches to the original assessment [here, the county board judgment].
[Id. at 414-15, 495 A.2d 1308.]
Although the plaintiff attacks the underlying rationale of the Essex County Board of Taxation’s judgments in this matter, there is nothing to suggest that the quantum of those judgments is far wide of the mark of true value. (A ten percent difference can hardly be “far wide of the mark.”) The proceeding in the Tax Court is a trial de novo, N.J.S.A. 2B:13-3b., not a review of the county board proceeding or an examination of the sufficiency of proof before the county board. See generally Chevron U.S.A. Inc. v. City of Perth Amboy, 9 N.J.Tax 571, 581 (1988) (citing Black’s Law Dictionary which defines a hearing ‘de novo’ court as one of original and not appellate jurisdiction). As a result, no examination of the underlying rationale of the county board is warranted.
I have reviewed the testimony adduced at trial to determine whether the Township of Nutley has put forth, by a preponderance of the evidence, values of the nineteen properties that are different from the nineteen values established by the county board. This is the approach that has been adopted by the Tax Court, and explained in Rumson Bor. v. Peckham, 7 N.J.Tax 539 (1985):
Although plaintiff thus carried its burden of production, merely overcoming the presumption of correctness in a Tax Court proceeding does not entitle plaintiff to a judgment in its favor. A trial in the Tax Court (formerly the Division of Tax *316 Appeals) “is a de novo one in which the ultimate fact sought to be determined is the full and fair value of the subject property.” Rek Investment Co. v. Newark, 80 N.J.Super. 552, 557, 194 A.2d 368 (App.Div.1963); Atlantic City v. Moltich, 3 N.J.Tax 147, 153 (1981); N.J.S.A. 54:51A-1. Throughout the Tax Court proceedings, plaintiff retains the burden of ultimate persuasion to upset the county tax board judgment fixing the assessment for the subject property. Herman Holding Corp. v. Montvale, 5 N.J.Tax 199, 202 (1983); cf. Anderson [Andersen] v. Exxon Co., supra, 89 N.J. [483] at 483, 446 A.2d 486 (1982). This burden is met only when the court can conclude by a preponderance of the credible evidence that plaintiff’s opinion of value represents the true value of the subject property. Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 208 A.2d 153 (App.Div.1965).
In the present case the presumption disappeared once plaintiff met its burden of production of sufficient, competent evidence and overcame the presumption of correctness of the judgment of the Monmouth County Board of Taxation. In order to prevail ultimately, the borough [plaintiff] must also persuade the court by a preponderance of the credible evidence that its opinion of value corresponds to the value of the subject property.
[Id at 550-51.]
This approach is entirely consistent with the Appellate Division’s decision in North Bergen Tp. v. Estate of Dieckmann, 37 N.J.Super. 221, 117 A.2d 190 (App.Div.1955), where the court remanded the case to the Division of Tax Appeals for a full consideration of the trial testimony following a finding that the presumption of correctness of the county board had been overcome by the township. See also Passaic v. Gera Mills, supra, 55 N.J.Super. at 88, 150 A.2d 67 (rejecting the city’s argument that, after the presumption of correctness of the county board is overcome, the presumption in favor of the original assessment is revived and the taxpayer assumes the burden of proof).
In applying the rule of Rumson Bor. v. Peckham to my factual findings, I find that Nutley has failed to show by a preponderance of the credible evidence a value different from that determined by the county board. Plaintiff’s counsel has candidly conceded that the starting point for this court’s evaluation is the county board judgment. Plaintiff did not put forth any evidence of value, but focused its attacks on the reasonableness of the 10% reduction in the assessments by the county board. Even if I were to find that the 10% reductions were not justified, plaintiff did not provide any alternative value which I could use to determine true value. Value is not established by proof of an assessment. Pan *317 tasote Co. v. City of Passaic, 6 N.J.Tax 34, 42 (1983), aff'd, 7 N.J.Tax 663 (App.Div.1984), aff'd, 100 N.J. 408, 495 A.2d 1308 (1985). Assessments are established after a proof of value. As a consequence, the only value I have before me is the value implicit in the judgment of the Essex County Board of Taxation.
The Appellate Division concluded that “the trial judge was required to evaluate the evidence without any presumption of correctness to the County Board of Taxation judgment (sic) because the presumption had been properly rebutted.” It is the law of this case that the presumptions of correctness of the county board judgments have been rebutted. The plaintiff has met its burden of production of evidence. The presumptions of correctness of the original assessments are not revived by the plaintiff municipality’s having met its burden of production of evidence. Passaic v. Gera Mills, supra, 55 N.J.Super. at 88, 150 A.2d 67. The evidence is insufficient to find any values. Neither party has met its burden of persuasion. Accordingly, plaintiffs claim must be dismissed. Rumson Bor. v. Peckham, supra, 7 N.J.Tax at 549-50.
The Appellate Division has implicitly questioned the foundation for the Essex County Board of Taxation’s reduction of the nineteen original assessments. The function of the county board of taxation is different from that of this court. County board members are residents of the county and have “special qualifications, knowledge and experience in matters concerning the valuation and taxation of property, particularly of real property.” N.J.S.A. 54:3-2. The county board has special powers to revise and correct assessments. N.J.S.A. 54:3-11 and -15, N.J.S.A 54:4-47. The review of the county board determination by the Tax Court is a review of the quantum of the affirmed or revised assessment, it is not a review of the method by which the county board of taxation reached its conclusions. The authority of the Tax Court in reviewing county board judgments is not to determine whether the county board acted correctly based on the evidence it heard, or whether there was substantial credible evidence on the record to support the county board’s findings *318 (standards of review employed by the Appellate Division in appeals from the trial courts), but whether the evidence submitted to the Tax Court is sufficient to cause this court to reach a different conclusion.
Our system of review of tax assessments requires deference to the decision made below and application of the proper standards of review. Cf. State v. Wallace, 146 N.J. 576, 684 A.2d 1355 (1996) (holding that it was error for the Appellate Division to reverse the trial court’s affirmance of the determination of the county prosecutor denying an application for pretrial intervention (PTI) — where the discretion for that determination rested with the county prosecutor and deference to that decision was appropriate). The Township of Nutley, the plaintiff in this court, has the burden of ultimate persuasion to upset the county board judgment. It presented its case; it rested; it failed to carry that burden. Passaic v. Gera Mills, supra, 55 N.J.Super. at 89, 150 A.2d 67. Although the Appellate Division has found that the plaintiff has met its burden of production of evidence, I find that it has not met its burden of persuading this court by evidence that is definite, positive, and certain in quality and quantity of the true value of each of the nineteen properties. It follows that this court cannot disturb the nineteen county board judgments.
The court will enter nineteen separate judgments dismissing the nineteen complaints challenging the nineteen county board judgments.
*319 [[Image here]]
*320 [[Image here]]

 With regard to whether Tax Court judgments should affirm assessments or dismiss complaints, see Southgate Realty Assocs. v. Bordentown Tp., 246 N.J.Super. 149, 586 A.2d 1338 (App.Div.1991) (holding that when a taxpayer fails to comply with N.J.S.A. 54:4-34, commonly referred to as Chapter 91 (L. 1979, c. 91, § 1), a judgment of dismissal rather than affirmance should be entered). After the trial of these cases, I could not find value. Accordingly, it would have been more appropriate to have entered judgments dismissing the complaints for failure of proof rather than affirming judgments in amounts which this court could neither replace with other values or verify as correct.

 Note our Supreme Court’s use of the term "the assessment of the County Board" rather than the county board judgment. In effect the judgment of the county board revising an assessment becomes a new assessment. The original assessment, and the presumption that it is correct when challenged at the county board, disappear after the entry of the county board judgment.