KAHN, J.T.C.
Taxpayer seeks relief from the 1981 assessment of its property, known as Block 155, Lot 13-A, and located at 27 Orient Way, Rutherford, New Jersey. The assessment of $335,900 (land, $152,600; improvements, $183,300) was affirmed by judgment of the Bergen County Board of Taxation. The assessment of the land is unchallenged, but due to substantial destruction of the improvements by fire, the plaintiff claims that the assessment thereon should be reduced pursuant to N.J.S.A. 54:4-35.1, which states:
When any parcel of real property contains any building or other structure which has been destroyed, consumed by fire, demolished, or altered in such a way that its value has materially depreciated, either intentionally or by the action of storm, fire, cyclone, tornado, or earthquake, or other casualty, which depreciation of value occurred after October first in any year and before January first of the following year, the assessor shall, upon notice thereof being given to him by the property owner prior to January tenth of said year, and after examination and inquiry, determine the value of such parcel of real property as of said January first, and assess the same according to such value.
The borough contends that the building was not destroyed within the meaning of N.J.S.A. 54:4-35.1 until after midnight on December 31, 1980, and that the notice requirement was not satisfied:
[t]he assessor shall, upon notice thereof being given to him by the property owner prior to January tenth of said year ... determine the value of such parcel of real property. [Ibid.]
In addition to charging that the fire occurred prior to January 1, 1981, taxpayer alleges that the boiler located in the basement of the building constitutes part of the realty and that it was not functioning prior to midnight of December 31, 1980. The lack of functioning, according to the taxpayer, constitutes damage and depreciation within the meaning of N.J.S.A. 54:4-35.1.
*608 As to the notice requirement, taxpayer submits that adequate notice was transmitted by correspondence from and to certain Rutherford officials dated January 2, 1981. As Rutherford officials were present at the site of the fire, taxpayer argues that the borough was well aware of the destruction.
Taxpayer’s witnesses included William S. Bigelow, a fuel and gas consultant, duly qualified to testify as to causation of fire and related damage. Additionally, taxpayer produced two eyewitnesses to the fire. Admitted into evidence were Bigelow’s report and opinion, including the entire Rutherford Police Department file, a sketch of the building drawn by one of the witnesses, and a sketch of the surrounding streets and area also drawn by another witness.
Bigelow stated that the fire appeared to be caused by a malfunctioning of the low water cut-off switch of the boiler, which caused the boiler to continue heating and ultimately to overheat. Based upon his investigation, he opined that the water cut-off failure occurred approximately between the hours of 7:00 and 8:00 p.m. on December 31, 1980. He indicated that this opinion was based upon information from the taxpayer that the boiler was properly working at approximately 5:00 p.m. on the same day (December 31, 1980), roughly the time that workers left the building. From the time the shut-off valve ceased to properly function, the heat would have traveled upwards and created a fire in the interior of the building at approximately 11:00 p.m., December 31, 1980. Based upon the structure of the building, the witness estimated that the fire would have broken through the roof at approximately midnight thereby allowing air to come back into the building. This set of circumstances, according to the witness, would have created an explosion within two hours after the fire broke through the roof.
Bigelow acknowledged that he never physically examined the premises, and that all his information was based on reports and information presented by the taxpayer’s representatives.
*609 The majority of the eyewitnesses’ testimony and documentation of the fire placed its occurrence after midnight, December 31, 1980. The police reports indicated that an alarm was registered at 2:45 a.m., January 1, 1981, and some eyewitnesses indicated that they saw the fire at approximately 2:00 a.m. on that date. There were, however, other witnesses who testified to having observed a fire at the premises as early as approximately 12:30 a.m., January 1, 1981. A representative of the taxpayer testified that upon leaving the premises at approximately 5:00 p.m., December 31, 1980, there was no indication of a problem that could have led to a fire.
Also contained in the police report file is a report dated March 17, 1981, by Carl Zazzaro, who has expertise in the determination of the causation of fires. He indicated that “due to lack of water being fed into the boiler” there was an “overwhelming amount of heat within the boiler steel tubes” which caused them to burn and rupture. The explosion occurred due to the oil burner continuing to pump oil onto the hot chamber of bricks and metal. Sparks caused by the explosion started the fire. His report appears to partially conflict with the testimony of Bigelow.
None of the taxpayer’s witnesses rendered any opinion as to the extent of damage or valuation depreciation occurring prior to midnight, December 31, 1980. All parties acknowledged that the building was substantially or totally destroyed at the termination of the fire at approximately 3:00 a.m., January 1, 1981.
With respect to its claim that the statutory notice requirement was fulfilled, taxpayer points to two letters dated January 2, 1981. The first, to Mayor Chadwick of Rutherford from a representative of taxpayer, requested a temporary permit to operate from an office trailer by reason of the fire. The second letter to the taxpayer from Rutherford’s construction official confirmed an order tp the taxpayer by the borough that parts of the building were to be removed. The letter further prohibited entry into the building unless authorized. It should be noted *610 that neither letter concerned a review of the assessment of the subject property by reason of damage by fire.
The taxpayer has the burden of proof to establish the facts necessary to obtain the relief it seeks by a preponderance of the evidence. N.J.S.A. 2A:84A-5. Cvelich v. Erie R.R. Co., 120 N.J.L. 414, 199 A. 771 (Sup.Ct.), aff'd 122 N.J.L. 26, 4 A.2d 271 (E. & A.1938), cert. den. 307 U.S. 633, 59 S.Ct. 1033, 83 L.Ed. 1516 (1939); Rothman v. City of Hackensack, 1 N.J.Tax 438, 443 (Tax Ct.1980), aff’d 4 N.J.Tax 529 (App.Div.1981); see Evid.R. 1(4), Comment 5 (Anno.1984); McCormick, Evidence at 793 (2 ed. 1972); 9 Wigmore, Evidence (3 ed. 1940), § 2498 at 325.
This court must determine, once the property assessment and value has been established, whether there is any authority for reducing the assessment by reason of casualty loss occurring during the tax year. By the adoption of N.J.S.A. 54:4-35.1, the Legislature determined that real property is to be valued as it exists on October 1 of the pre-tax year. The time period for reducing the value by reason of any material depreciation is limited to that period between the assessment date and December 31 of the pre-tax year. No value reduction, however, may be granted for depreciation after January 1.
Where the words of a statute are clear and their meaning and application plain and unambiguous, there is no reason for judicial construction, White v. State Bd. of Tax App., 123 N.J.L. 350, 353, 8 A.2d 819 (Sup.Ct.1939), and courts cannot arbitrarily expand their scope. Galloway Tp. v. Petkevis, 2 N.J.Tax 85, 92-93 (Tax Ct.1980). The words of N.J.S.A. 54:4-35.1 are clear:
[a]ny building or other structure which has been destroyed, consumed by fire, demolished or altered in such a way that its value has materially depreciated ... which ... occurred after October first in any year and before January first of the following year, the assessor shall ... determine the value of such parcel of real property as of said January first, and assess the same according to such value.
To find for the taxpayer, I must determine that material or substantial destruction occurred prior to midnight, December *611 31, 1980. I cannot make such a finding as the taxpayer has failed to demonstrate by a preponderance of the evidence that the building was substantially destroyed by fire at that time. Clearly, there was no testimony that a fire was observed prior to midnight. Although Bigelow testified as to a possible cause for the fire and traced a sequence of events which led to his conclusion that some time prior to midnight on December 31, 1980, the fire broke through the roof, other reports disputed this opinion.
Bigelow testified that the fire may have started at around 11:00 p.m., but did not break through the roof until midnight. There was no evidence submitted to show that there was substantial damage prior to midnight. Other witnesses first observed a fire around 2:00 a.m. The fire alarm was not sounded until 2:45 a.m. The cumulative evidence indicates that while the fire may have started in the boiler area prior to midnight causing some damage, the building was not completely or substantially destroyed until the fire broke through the roof, after midnight, as testified to by Bigelow.
Taxpayer likewise failed to support its contention that the malfunctioning of the boiler prior to midnight, December 31, 1980, constituted substantial damage or destruction to the real estate. Taxpayer’s contention hinges on the court’s finding that the boiler is part of the real estate and not personal property. However, there is nothing in the record that could lead this court to such a conclusion. In Sta-Seal, Inc. v. Taxation Div. Director, 5 N.J.Tax 272 (1983), the court discussed in great detail the tests in determining whether property is personal or real. Judge Conley observed:
The argument as to what is realty and what is personalty will go on forever. The facts in each individual case are obviously important, but the first inquiry in these cases is what kinds of facts will be relied on to make the determination, [at 285-286]
The judge, among other considerations, found that certain equipment could be removed without “material injury to the freehold” as that phrase was construed in Bayonne v. Port Jersey Corp., 79 N.J. 367, 399 A.2d 649 (1979). In Sta-Seal, *612 however, Judge Conley had before him substantial testimony from which he could deliberate.
In the instant case, although the taxpayer produced some testimony that the boiler was not operating, there was not the kind of evidence required for the court to make a determination as to whether the boiler constituted real or personal property. The words of the statute “building or other structure” are specific and unambiguous, and cannot .be construed as including mechanical equipment. Taxpayer has not submitted any evidence that the Legislature intended boilers or other equipment to be included in the phrase “building or other structure.”
In Galloway Tp. v. Dorflinger, 2 N.J.Tax 358 (1981), Judge Lario held that material destruction of property occurring in the middle of the tax year did not entitle the property owner to a reduction in value. The court specifically stated that “[t]he court is aware of the seeming inequity of requiring a taxpayer to pay taxes on an improvement that has been destroyed; however, this is a policy matter to be resolved by the Legislature. Subject to constitutional restraints, the Legislature is supreme in its exclusive field of taxation.” Id. at 363. Therefore, if relief is to be provided in matters such as this, it must come from the Legislature and not from the courts.
I find, in addition, that no notice in accordance with the statute was given to the assessor. The statute is clear that notice must be given to the assessor by the property owner concerning the depreciation in value prior to January tenth of the tax year. The only letter from the property owner concerning the fire was addressed to the mayor of Rutherford, not the assessor. Although there was mention of the fire, there was no reference to any depreciation in value or request for tax relief. It only sought permission to use a temporary office trailer. The other letter, addressed to taxpayer from Rutherford’s construction official, concerned the condemnation of the property.
*613 Taxpayer has not demonstrated any intention by the Legislature to eliminate the necessity of the notice requirement set forth in N.J.S.A. 54:4-35.1. The statute plainly states that notice must be given to the assessor. The aforementioned correspondence is not only not directed to the assessor, but does not even convey the taxpayer’s intention to seek relief from the assessment by reason of the fire. The purported notice, therefore, does not meet the terms of the statute. Taxpayer has failed to give the court any reason to accept less than what the statute requires.
In view of the foregoing, the judgment of the Bergen County Board of Taxation is affirmed and judgment will be entered as follows:
Land $152,600
Improvements $183,300
Total $335,900