RIVERVIEW GARDENS, SECTION ONE, INC., A CORPORA-
TION OF NEW JERSEY, ET AL., APPELLANTS, v. THE
BOROUGH OF NORTH ARLINGTON, RESPONDENT.

Argued March 3, 1952—Decided March 24, 1952.

*Mr. Nicholas S. Schloeder* argued the cause for the appellants.

*Mr. Milton Bruck* argued the cause for the respondent (*Messrs. Bruck & Bigel*, attorneys).

The opinion of the court was delivered by

BURLING, J. Appeals filed by the owners of ten apartment properties of the type commonly known as garden apartments, classified as "608's" by the building trades and in real estate circles by virtue of the construction and financing of those properties under section 608 of the National Housing Act, challenge the judgments of the Division of Tax Appeals, Department of the Treasury, State of New Jersey, to the extent said judgments fixed the valuations and (in effect) approved the assessments laid by the respondent Borough of North Bergen upon the improvements existing on appellants' lands (there being no dispute as to the land valuations), which had been reduced by the Bergen County Board of Taxation. The several appeals, 16 in number, were addressed to the Superior Court, Appellate Division, and were consolidated by order of that court entered September 16, 1951. Prior to hearing there certification was granted upon this court's own motion.

There are ten apartment owners involved in these appeals, namely: Riverview Gardens, Section One, Inc.; Riverview Gardens, Section Two, Inc.; Riverview Gardens, Section Three, Inc.; Skyline Gardens; Ridge Park, Inc., Section 1; Ridge Park, Inc., Section 2; Ridge Park, Inc., Section 3; Ridge Park, Inc., Section 4; Ridge Park, Inc., Section 5; and Canterbury-at-Arlington, Inc.

Riverview Gardens, Sections One, Two and Three, Skyline Gardens and Ridge Park, Inc., Sections 1 to 5, inclusive, appealed to the Bergen County Board of Taxation from the

original 1949 assessed valuations as fixed by the borough. The county board reduced each of the valuations. However, with regard to Riverview Gardens, Sections One and Two, and Skyline Gardens, the judgments of the county board stated that the judgments relating to these 1949 assessments were based on the judgments of the county board on the assessments for the 1947 assessment year; the six remaining judgments as to 1949 assessments and the ten judgments as to 1950 assessments of the county board, all 16 of which are the subject of these consolidated appeals, did not state any basis or reason for the reduction. The only appeals determined by the county board on the 1947 assessments were those of Riverview Gardens, Sections One and Two, and Skyline Gardens. The remaining property owners appealed for the first time as to the 1949 assessments, with the exception of Canterbury-at-Arlington, Inc., which appealed for the first time on the 1950 assessment.

Upon the entry of the nine judgments on the 1949 assessments by the county board and within the time limited, the borough filed appeals in all cases to the State Division of Tax Appeals. In the 1949 assessment cases of Riverview Gardens, Sections One and Two, and Skyline Gardens, the petitions of appeal filed by the borough, in addition to the usual allegations also alleged a change in value between the assessment years 1947 and 1949 in order to eliminate the binding effect of *R. S.* 54:3–26. Thereafter, and while these nine appeals were still pending, the borough fixed the assessed valuations for these nine properties and also that of the property of Canterbury-at-Arlington, Inc., for the taxable year 1950. All ten property owners then appealed to the county board from the original 1950 assessed valuations as fixed by the borough. The county board reduced these 1950 valuations of all ten properties, the judgments failing to point out the basis for the reduction. These ten appeals for the taxable year 1950 were heard and determined by the county board prior to the hearing and determination of the 1949 assessments by the Division of Tax Appeals.

Thereafter, and within the time limited, the borough appealed to the Division of Tax Appeals from the ten judgments entered by the county board for the taxable year 1950. The 1949 assessment year and 1950 assessment year appeals pending before the Division of Appeals were consolidated and all 19 appeals were heard together.

During the course of the hearing, upon stipulation of counsel and with the consent of the Division of Tax Appeals, the appeals of the borough concerning Riverview Gardens, Sections One and Two, and Skyline Gardens for the assessment year 1949, were placed in one category and considered together, solely on the question of whether or not the borough was bound for the assessment year 1949 by the county board judgments for the assessment year 1947. The Division of Tax Appeals decided that the 1947 assessments (as levied on those county board judgments) were binding and entered judgments accordingly. These three 1949 assessment cases are not included in the appeals presented to this court.

The remaining 16 cases were heard by the Division of Tax Appeals on the question whether the original assessments as fixed by the borough were in excess of true value. Upon the evidence produced before it, the Division of Tax Appeals determined that in each of the 16 cases the original assessed valuations did not exceed true value, and accordingly entered judgments reversing the county board's determinations and restoring the original assessed valuations. From these judgments the owners addressed their present appeals to the Superior Court, Appellate Division. As before noted, certification was granted upon our own motion prior to hearing there.

The first question involved relates to the construction and application of the so-called "freeze" statutes, R. S. 54:3–26, as amended by L. 1946, c. 161, and R. S. 54:2–43, as amended by L. 1946, c. 161, and their application to three of the appeals, namely, those relating to the 1950 assessments of Riverview Gardens, Sections One and Two, and Skyline Gardens. R. S. 54:3–26, as amended, *supra,* provides:

172

"Where no appeal is taken to the Division of Tax Appeals in the State Department of Taxation and Finance to review the action or determination of the county board involving real property the judgment of the county board shall be conclusive and binding upon the municipal assessor and the taxing district *for the assessment year, and for the two assessment years succeeding the assessment year,* covered by the judgment, except as to changes in value of the property *occurring after the assessment date.* Where such changes are alleged the petition of appeal shall specifically set forth the nature of the changes relied upon as the basis for such appeal." (Emphasis supplied)

*R. S.* 54:2–43, as amended, *supra,* provides:

"Where a judgment final has been rendered by the Division of Tax Appeals in the State Department of Taxation and Finance involving real property such judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to such appeal, *for the. assessment year and for the two assessment years succeeding the assessment year* covered by the final judgment, *except as to changes in the value of the property occurring after the assessment date.* Where such changes are alleged, the petition of appeal shall specifically set forth the nature of the changes relied upon as the basis for such appeal." (Emphasis supplied)

The appellants' contention is that the action of the county board on the appeals from the 1949 assessments on properties of Riverview Gardens, Section One, Inc., Riverview Gardens, Section Two, Inc., and Skyline Gardens, and the affirmance of that action by the Division of Tax Appeals (which, as before noted, was not appealed), precluded a. change in assessments for the year 1950 (except for changes in the value of the property occurring after the date at which the assessments were attempted to be made for 1949), under the foregoing statutes. This application of the statutes would extend the "freeze" of the assessments made in 1947 to the assessment years 1950 and 1951 and would thus require the reversal of the judgments of the Division of Tax Appeals as to the assessments on these properties for 1950, and result in reduction of the assessments to the 1947 level. We are unable to find support for the appellants' contentions on this aspect of the consolidated appeals. The appellants'

argument appears to assert that the determination of the Division of Tax Appeals on the 1949 assessment appeals that no change in value of the property had occurred since the 1947 assessment constituted a determination that the 1947 assessment constituted a true valuation of the property for the 1949 assessment year.. This is not so. An assessment that is either too high or too low may be "frozen" under the cited statutes and remain so for the statutory period unless there were *changes* in the value of the property "after the assessment date." It follows that the denial of increase or decrease in assessment during the "freeze" period is a mere determination that no change in value of the property occurred after the assessment date for the base assessment year, and is not a determination that the assessment for that base year (or for the subsequent assessment year to which the determination is directed) is a true valuation of the property within the scope of the statutory standard. The base "assessment year" and "assessment date" specified in the statute are necessarily those at which the last true valuation of the property was determined by the assessor on the merits. The record is clear that in this case that assessment year for which such a determination was made was the 1947 assessment year. The action of the county board and that of the Division of Tax Appeals were mere adjective determinations that the 1947 assessment controlled for the assessment years of 1948 and 1949, and were thus determinations that no new assessment should have been attempted. The only reasonable application of the words "except as to changes in value after the assessment date" results in this conclusion. The application of the statute sought by the appellants is not in accord with the legislative intent. Compare *Newark v. Fischer,* 8 *N. J.* 191, 199 (1951).

The second question involved in these appeals relates to all 16 cases, and is stated by the appellants as follows: where a property assessment has been made by application of a gross income multiplier, contrary to the statutory criterion, as distinguished from its faulty application, is the presumption

in favor of the validity of an assessment destroyed so as to shift the burden of establishing what the assessment ought to be upon the taxing district? However, in their reply brief the appellants seem to abandon this question, saying that the respondent "misconceives the argument in relation to presumption" and "No attempt is made to rely on it." The questions broached to the court by the respondent, whether there was sufficient competent evidence before the Division of Tax Appeals to support the judgments of that tribunal, and whether its judgments should be reversed on an issue of fact except for palpable error, seem to constitute the real issues on these consolidated appeals.

The appeals to the Division of Tax Appeals in these cases were governed by *R. S.* 54:2–39 as amended by *L.* 1944, *c.* 240, *sec.* 1 and by *L.* 1946, *c.* 161, *sec.* 8. The latter amendment (effective April 25, 1946) introduced the following language into the statute:

"Each petition of appeal shall be verified and shall contain full and complete information as to the land, including the size of the lot, a description of the buildings and structures thereon, if any, and the use thereof and further shall detail the income and expense of operation in cases of income producing property. No petition of appeal shall fix any sum as the value of said property in question, but shall contain a general prayer that the assessment be increased or decreased (as the case may be) to the true value thereof."

*R. S.* 54:3–22, as amended by *L.* 1946, *c.* 161, *sec.* 17, provides in effect for a hearing *de novo* before the county board of taxation on appeal of an assessment. *R. S.* 54:2–39, as amended, *supra,* provides a similar hearing on appeal to the Division of Tax Appeals. It has been held that on appeal to the county board, there exists a presumption in favor of the *quantum* of the tax assessment made by the local taxing authority and the burden is on the taxpayer to prove otherwise. *L. Bamberger & Co. v. Division of Tax Appeals,* 1 *N. J.* 151, 159 (1948); *N. J. Bell Telephone Co. v. Newark,* 118 *N. J. L.* 490, 494 (*Sup. Ct.* 1937), affirmed *per curiam,* 124 *N. J. L.* 451 (*E. & A.* 1940); *Central R. R. Co. of N. J.*

*v. State Tax Dept.,* 112 *N. J. L.* 5, 8 (*E. & A.* 1933), *certiorari* denied 293 *U. S.* 568, 79 *L. Ed.* 667 (1934). It has also been held that a similar presumption attaches to the judgment of the county board on the appeal to the Division of Tax Appeals. *Hackensack Water Co. v. Division of Tax Appeals,* 137 *N. J. L.* 599, 600 (*Sup. Ct.* 1948), affirmed in part, and reversed in part on other grounds, 2 *N. J.* 157 (1949). The weight of the presumption so accorded the assessment or the judgment of the county board is overcome where, on the hearing *de novo* on appeal, the appellate tribunal is presented with sufficient competent evidence to determine the true valuation of the property. The legislative scheme provides independent review of the valuation of the property on which the assessment was based. *Hackensack Water Co. v. Division of Tax Appeals, supra* (at *p.* 166). We find sufficient competent evidence in the record to support the judgments of the Division of Tax Appeals increasing the assessments from those made by the judgments of the county board of taxation to the *quantum* determined by the assessor.

The statutory standard for assessment is "full and fair value" of the property "at such price as" in the judgment of the assessor "it would sell for at a fair and *bona fide* sale by private contract." *R. S.* 54:4–23, as amended by *L.* 1942, *c.* 281 and by *L.* 1943, *c.* 120. The statute neither requires nor excludes any specific formula for measuring fair value. It is apparent that the Division of Tax Appeals applied the "true value" standard set forth in the statute.

The owners relied solely on the conclusions of their expert Fyfe, who gave his opinion of value (*i. e.,* "what a willing purchaser would be willing to pay and a willing seller would be willing to accept") on his "knowledge and experience," and repeatedly testified that he did not analyze reproduction cost, did not take into consideration return on investment in his "actual physical processes" in "figuring out" the true value, did not go through any mathematical procedure to arrive at the value per room upon which he based his opinion,

although gross rentals entered into his mental processes, and his study of expenses was not reflected in his testimony of value.

The testimony of Cobb, the respondent's assessor, is of little value, for it indicates that he based the original assessment solely on the income-multiplier formula. However, the respondent's witness Powell, who testified as to full and fair value of the properties in question on the statutory standard of *bona fide* sale by private contract between willing buyer and willing seller, based his opinions on several factors. These included personal inspection and detailed analysis and report as to the details of construction of the improvements, the numbers of living and garage units involved, the area of land used, the plot plan or physical layout of the structures and examination of the plans and specifications of the subject properties as well as proximity to stores, schools and churches and general location. Fyfe testified that he "substantially" agreed with Powell's description of the properties. Powell also studied the financial statements, actual audit reports, which the owners had filed with the county board of taxation. He testified that he used three methods of valuation for support of his opinion, characterizing these as "checks" which a purchaser weighs in considering a property for purposes of acquisition. He testified that these methods were the depreciated reproduction or cost approach, and the comparison of sales of similar properties. As to the first two of these methods of valuation, Powell testified in detail concerning the factors entering into his determination. On his third approach he was precluded from testifying specifically because he failed to indicate sufficient knowledge of sales of directly comparable properties to constitute proper proofs.

The Division of Tax Appeals analyzed not only the testimony of Fyfe and Powell, but also considered the physical factors of the improvements themselves. The evidence in these cases supports that analysis and we agree with the conclusions reached thereon by the Division of Tax Appeals.

Compare *Prudential Ins., &c., v. Division of Tax Appeals,* 133 *N. J. L.* 153 (*Sup. Ct.* 1945).

For the reasons stated the judgments of the Division of Tax Appeals, consolidated for argument on these appeals, are affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT and BURLING—3.

*For reversal*—Justices HEHER and WACHENFELD—2.