HOPKINS, J.T.C.
These are appeals from the judgment of the Passaic County Board of Taxation for the taxable year 1979 and from the assessments for the years 1980 and 1981 with respect to the value of property located at 2-52 Jefferson Street and known as Block 4075, Lot 3 in the taxing district of Passaic. The assessed values, as well as the judgment of the county board, are as follows:
Original Assessment -1979 County Board
Land $149,400 $149,400
Impts. 1,468,500 1,468,500
Total 1,617,900 1,617,900
Original Assessment -1980 Original Assessment -1981
Land $149,400 $149,400
Impts. 1,480,500 1,529,300
Total 1,629,900 1,678,700
The issues involved are the true values and the appropriate ratios to be utilized, if applicable, for each of the years in question.
The subject property is an owner-occupied industrial complex containing approximately 175,000 square feet, including the basement area of approximately 4,200 square feet underlying an office building. The land area is approximately 5.725 acres. The major portion of the complex was built prior to 1960. However, the improvement history indicates continued improvements through 1981 so that approximately 25% of the area was constructed since 1951.
The building construction is heavy industrial with steel, concrete and mill type superstructure, brick, masonry and transite exterior walls, composition roofs over steel deck and wood frame, three-phase heavy duty electrical system with all wiring in conduit, industrial type lighting, steel casement windows, three high-pressure steam boilers and adequate restroom facilities. It has approximately 10,000 square feet of office space intermixed in the industrial buildings. Additionally, in 1961 the *37 taxpayer constructed a two-story and basement office building with 4,241 square feet on each of the floors. The first and second floors of the office building are described as modern office facilities. The basement is used, in part, for storage.
The property is used in the manufacture of polyvinyl chloride (PVC) products. It had originally been used to process leather and has evolved into the present manufacturing process. When taxpayer first engaged in the manufacture of PVC products it purchased the PVC pellets used in the manufacture of the plastic. It now manufactures its own PVC pellets through the use of two reactors. The reactors are contained in special explosion proof structures with walls two feet thick. They are located in an area which backs upon open space.
The property also contains ten storage tanks, referred to as silos, which are used to store the PVC resins. These silos are approximately 40 feet high and have physical features similar to water towers. They are supported by steel beams attached to substantial concrete bases.
Taxpayer alleges that the assessed values of the subject property for the years involved should be predicated upon their true values as of the assessing dates, together with an application of an unweighted ratio determined from those sales analyzed by the Division of Taxation for the periods involved. In support of that position, taxpayer introduced an expert whose testimony concluded a true value based primarily on the capitalization of income approach. Taxpayer’s expert opined that the property should be valued on the basis of 170,741 square feet at rental values as follows:
Date First floor Upper floors Taxpayer’s claimed value
$0.65 1979 $1.30 $754,000
1980 1.37 0.68 767,000
1981 1.45 0.72 805,100
In arriving at an economic rent for the subject property, taxpayer’s expert utilized nine leases of industrial property located in Passaic. Eight of the leases were entered into during *38 the period of February 7,1977 to February 15,1978. The ninth lease, dated March 1,1981, was subsequent to the 1981 assessing date of October 1, 1980. Six of the eight comparable leases were for facilities in which the heat was furnished by the lessor. The appraiser adjusted those rentals by reducing them by $.20 a square foot in an attempt to reflect a rental of unheated space.
Taxpayer’s expert also considered the market approach to value and testified to a sale of a three story industrial complex located in Passaic, which was built in the period 1920 through 1958. It was sold on January 21,1981, which was subsequent to the latest assessing date, at $4.55 a square foot of building area. He believed that the sale property was superior in location and construction to the subject property. Accordingly, he concluded that the subject property had 12% less value than the sale property. Using that sale, he valued the subject property at $4.00 a square foot of building area, or $683,000.
Defendant’s assessor testified that the assessments for the subject property had been in dispute for the years 1971 through 1978. The litigation had produced three opinions by the Division of Tax Appeals and two remands by the Appellate Division. Subsequently, the disputed assessments were settled. That settlement resulted in an agreed assessment for 1978 in the amount of $1,310,000. The assessment had been predicated on a true value of $1,738,784 with the application of a ratio. Using the 1978 true value settlement figure, the assessor attempted to justify the disputed assessments by trending that figure with a 10% annual appreciation, adding thereto the values shown on construction permits and applying the Chapter 123 ratio to the computed value.
N.J.S.A. 54:4-23 provides the statutory criterion for determining value in local property tax cases. It provides that:
[A]fter examination and inquiry, [the assessor shall] determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 next preceding the date on which the assessor shall complete his assessments, as hereinafter required....
*39 In New Jersey that concept has been expressed in terms of the price which could be obtained for property, in money, at a fair sale between a willing seller and a willing buyer. New Brunswick v. Tax Appeals Div., 39 N.J. 537, 543, 189 A.2d 702 (1963). The appropriate approach to ascertaining the taxable value of property depends upon the facts of the particular matter. Id. at 543-544, 189 A.2d 702. Further, property categorized as special purpose or as a unique structure, for which there is no recognized market, is normally valued by the cost approach with appropriate adjustments for depreciation and economic and functional obsolescence. Anaconda Co. v. Perth Amboy, 157 N.J.Super. 42, 46, 384 A.2d 531 (App.Div.1978), vacated on other grounds 81 N.J. 55, 404 A.2d 1155 (1979); Dworman v. Tinton Falls, 1 N.J.Tax 445, 452 (Tax Ct.1980), aff’d o.b. 3 N.J.Tax 1, 180 N.J.Super. 366, 434 A.2d 1134 (App.Div. 1981), certif. den. 88 N.J. 495, 443 A.2d 709 (1981).
There exists a presumption in favor of a tax assessment made by the local taxing authority and the burden is on the taxpayer to prove otherwise. Further, a similar presumption attaches to the judgment of the county board on an appeal. Riverview Gardens v. No. Arlington, 9 N.J. 167, 174-175, 87 A.2d 425 (1952). The weight of those presumptions is overcome where, on a de novo trial, the Tax Court is presented with sufficient competent evidence to determine the true value of the property. Id. at 175, 87 A.2d 425.
In its effort to comply with the required burden to upset the subject assessments, taxpayer’s expert assumed that the subject property was to be valued simply by comparing it with other industrial property which had been leased or, in one instance, sold. However, the facts show that the subject property is an industrial complex which is owner-occupied. Included in this complex are various improvements which are unique in nature and which the taxpayer’s expert completely disregarded in reaching a total value. Those improvements include the reactor buildings which are unique to this property and which would undoubtedly be of little use to most of the market which *40 taxpayer’s expert had in mind. However, they are of vital importance in the functional use of the subject property. Improvements of this type cannot be disregarded in determining a taxable value for the property. See Anaconda Co. v. Perth Amboy, supra, which involved a copper refinery. The court recognized that it was special purpose property in nature and approved values for local property tax assessments based on a consideration of replacement cost with an appropriate allowance for physical depreciation and all forms of obsolescence. The above reasoning equally applies to the substantial steel and concrete supports for the ten storage silos located on the property. Taxpayer’s appraisal gave no value to these as the silos were considered personalty.
These silos are supported by large steel structures attached or embedded in substantial concrete bases. The opinion of the Division of Tax Appeals applicable to the subject property for the tax years 1971 through 1973, which is in this record, and which opinion was not remanded on the basis of any findings of fact, stated, on the basis of personal observation by the Division judge, that the foundations for such silos, being made of concrete and steel, were part of the real estate. Further, that opinion found that the silos, which were deemed to be personalty, were constructed at substantial cost. Tax history is evidential and often resorted to on review of an assessment. Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 103, 89 A.2d 385 (1952).
Taxpayer’s expert treated the office building as equivalent to industrial property. He believed that it constituted an overimprovement despite the undisputed fact that it was a modern office structure and was utilized by the owner to house that part of its operations which required such a structure. Without it, the owner would have had to either rent or purchase an office building at some other location.
In addition to taxpayer’s treatment, or lack thereof, of the reactor buildings, silo structure, and office building, the rental value determined has other flaws. These included a failure to explain the comparability of leasehold structures *41 which were constructed during the approximate period 1890 to 1915. His appraisal report shows that approximately 25% of the building area of the subject property was constructed since 1951. Further, his leasehold comparables all involve smaller areas. Taxpayer’s expert also failed to justify the $.20 a square foot adjustment to the comparable rents to reflect cost of heating. The only support in the record for that adjustment is a statement by taxpayer’s expert that it was based upon an analysis of heating costs for similar type facilities, both in Passaic and in other areas of the state. There may have been a study. However, the failure to support it other than with the mere statement that he had made the study does not require this court to accept that uncorroborated conclusion. This court has had sufficient experience to know that different buildings, through their method of construction, insulation, and outside exposure, have different heating costs. An expert’s opinion rises no higher than the data on which it is founded. Passaic v. Gera Mills, 55 N.J.Super. 73, 150 A.2d 67 (App.Div.1959), certif. den. 30 N.J. 153, 152 A.2d 171 (1959); Genola Ventures v. Shrewsbury, 2 N.J.Tax 541 (Tax Ct.1981).
The failure to properly value the reactor buildings and silos, the treatment of a modern office building as factory space for valuation purposes, and the use of questionable comparable rents result in a failure to present sufficient competent evidence upon which a value, through the income approach, can be concluded. As such, it is unnecessary to comment on the basis for the expenses claimed and the capitalization rate utilized.
The sole comparable sale used by taxpayer occurred on January 26, 1981, subsequent to the last assessment date and absent a showing that it was known or reasonably ascertainable as of the assessment dates, should be limited to corroborating values arrived at by other means. Fort Lee Boro v. Invesco Holding Corp., 3 N.J.Tax 332 (Tax Ct.1981). In any event, it could not be used to support a value without considering the value of the unique improvements on the subject property.
*42 As the taxpayer has failed to establish the true value of its property, the issue of the appropriate ratio applicable to true value need not be considered. Greenwald v. Metuchen, 1 N.J.Tax 228 (Tax Ct.1980).
Defendant’s attempt to prove value by relying upon the prior year’s assessment is erroneous. It is well settled that each annual assessment of property for taxation is a separate entity, distinct from the assessment of previous years. Aetna Life Ins. Co. v. Newark, supra; Rodwood Gardens, Inc. v. Summit, 188 N.J.Super. 34, 455 A.2d 1136 (App.Div.1983); Lamm Assoc. v. W. Caldwell Boro., 1 N.J.Tax 373, 392-393 (Tax Ct.1980). While tax history is evidential and often resorted to on review of an assessment, see Aetna Life Ins. Co. v. Newark, supra, the ultimate test is whether the assessment is based upon true value for the year involved. In re Appeal of East Orange, 103 N.J.Super. 109, 113, 246 A.2d 722 (App.Div.1968). Accordingly, defendant’s proofs cannot support any adjustment to the assessed values.
A judgment will be entered affirming the judgment of the county board for 1979 and the assessments for 1980 and 1981.