208 N.J. Super. 654 (1986)
506 A.2d 811
CIGOLINI ASSOCIATES, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF FAIRVIEW, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1986.
Decided March 18, 1986.
*657 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and LONG.
Stanley L. Wyrzykowski argued the cause for appellant.
Stephen R. Spector argued the cause for respondent (Glock & Spector, attorneys).
The opinion of the court was delivered by MORTON I. GREENBERG, P.J.A.D.
This matter comes on before this court on appeal by defendant Borough of Fairview from tax court judgments reducing the assessed valuations for 1982 of 19 residential condominium units in a building known as Hamilton Court owned by plaintiff Cigolini Associates and applying the Freeze Act, N.J.S.A. 54:51A-8, to the assessments for the next two assessment years. Hamilton Court, though legally converted to the 19 individual units between October 1, 1980 and October 1, 1981, continued to be operated by plaintiff as an ordinary apartment house following conversion. However, inasmuch as the conversion was completed prior to October 1, 1981 (see N.J.S.A. 54:4-23) each of the units was individually assessed for 1982, the assessments ranging from $26,900 to $32,400, most being near the lower end of the range. The assessments totaled *658 $542,300.[1] Plaintiff appealed all 19 assessments to the Bergen County Board of Taxation which upheld the assessments.
Following the decisions by the county board plaintiff filed 19 complaints in the Tax Court, each seeking a reduced assessment for a single unit. Prior to trial in the Tax Court the parties moved for rulings on whether the building should be considered as divided into condominiums rather than continuing to be an apartment house for tax purposes. Plaintiff conceived that a negative ruling on that issue would allow it to value the building as an entity using an economic or income approach. Defendant believed that if the building were treated as divided into condominiums that approach to valuation could not be used. The judge denied the pretrial motions, deciding instead to determine the best method of valuing the property from the proofs at trial.
At trial the following evidence was developed.[2] Plaintiff built Hamilton Court in 1963 and had operated it as a rental apartment building. In 1980 it undertook to convert the property into single bedroom condominiums, 18 of 3 1/2 rooms with bath and one 2 1/2 rooms with bath. Following administrative approval for registration of the conversion, plaintiff in June 1981 recorded a master deed creating and establishing the condominiums. See N.J.S.A. 46:8B-8. By reason of the conversion the tenants had a statutory right to purchase their units under N.J.S.A. 2A:18-61.8, though by the time of the trial none had done so.[3]
Barry Barkan testified as an expert for plaintiff. In Barkan's view the highest and best use of the property "is for continued rental purposes and as such the most compelling and *659 accurate measure of its value would be the income approach to value...." Barkan believed that recording the master deed had no effect on valuation because "the filing in itself does not address the marketing aspects of the property which are most directly addressed and measured by the experience of the property," by which he meant plaintiff's inability to sell the units. In Barkan's opinion even though Hamilton Court was well built and well maintained the units were not selling because plaintiff was offering more desirable units for sale in another building in Fairview. After considering what he thought were the material factors regarding valuation, Barkan concluded that "it would be improper to accord condominiumization value" to Hamilton Court.
Barkan used the income approach to valuation by capitalizing the achievable net income from the property. He developed a capitalization rate by the mortgage equity method, arriving at a figure of 12.71% which, when adjusted for a tax factor, produced an overall capitalization rate of 15.24%. Application of this rate to what Barkan thought was the net operating income derived from the units, $42,742 yielded a market value of $280,000. Barkan also valued the property by the building residual method and arrived at a figure of $290,000. Ultimately Barkan valued the building at $285,000, midway between the two figures achieved by the income approach and the building residual method.
William J. Stack testified as an expert for defendant. In his view, "predicated on the fact that the master deed was filed," the highest and best use of the property was for condominium purposes. Stack recognized that the units had not been selling but he thought this did not mean that the highest and best use of the property was not for condominiums as the marketing period had been too short. In Stack's opinion, concluding that the conversion was not the best use of the property would have been second guessing plaintiff, as plaintiff had actually converted the building.
*660 Stack valued the property three different ways. Under the "comparative" approach, he calculated the "sell out" price of the building at $1,033,000, a figure predicated on plaintiff's proposed selling price of between $55,000 and $57,000 for each unit. Stack, however, lowered the figure to reflect costs that would be incurred by the owner on the resale as well as an entrepreneurial profit. By this method he arrived at a value of $587,519. He adhered to this value even though he recognized that it had been proposed that the tenants were to receive a 20% discount if they purchased their units. While Stack acknowledged that the units had not been selling, he thought there could be more vigorous marketing efforts.
Stack also used the capitalization of income approach and arrived at a value of $455,000. Finally, he utilized the modified replacement cost approach to yield a value of $640,400. His ultimate valuation based on consideration of the three results was $600,000.
The trial judge decided the matter in an oral opinion on June 7, 1984. He first concluded that plaintiff had overcome the presumption of validity of the assessments. He rejected Stack's sales comparison approach as there had been no sales. He also rejected the modified cost replacement approach because in his view willing sellers and buyers would not consider this to be an accurate measure of value for a 20 year old building.
The judge determined that the economic or capitalization of income approach was the most appropriate. He also held that he need not determine the legal status of the property as "preconverted, converted, or otherwise." Nevertheless he believed that the conversion of the property added to its value as the conversion costs had been paid and a purchaser of the building would have the option of selling the units. But the judge found no basis in the evidence to determine the amount of this added value. He chose a capitalization rate of 10% and added 2.5% for the effective tax rate, for a total rate of 12.5%. *661 Applying this rate to what he found was the net income, $47,496, produced a value of $379,968, rounded to $380,000. The judge applied a ratio against this figure under L. 1973, c. 123, N.J.S.A 54:51A-6, and determined the assessment to be $319,200. The judge, however, did not separately value each unit. Rather, he directed the attorneys to divide the assessment among the individual units, which they did. Judgments were entered on June 26, 1984 assessing the units between $15,800 and $19,100.
On June 7, 1984, immediately after the judge announced his decision, plaintiff orally moved for application of the Freeze Act, N.J.S.A. 54:51A-8, to the judgment. But the Freeze Act application was not decided until August 31, 1984 when the judge ruled that the act would apply for the following two assessment years. An order was entered reflecting this decision on October 5, 1984. On November 9, 1984 defendant filed a notice of appeal challenging both the reduction of the assessments and the order applying the Freeze Act. On November 29, 1984 a judgment was entered for each property reflecting the Freeze Act determination.
After the judge received the notice of appeal, he supplemented his oral decision in a written opinion issued November 15, 1984. He pointed out that plaintiff had made bona fide efforts to sell the units. Further, he explained why he accepted plaintiff's figure as adjusted by the court for economic rent. He developed a capitalization rate of 14.71%, which he reduced to 10% as the building had been converted. He added 2.5% to the 10% for the effective tax rate. The judge then explained that as the total assessed value exceeded the upper limit of assessed value/true value average ratio allowed under L. 1973, c. 123, N.J.S.A. 54:51A-6, plaintiff was entitled to further relief. He reduced the $380,000 value he found by applying a ratio of 84%, as this was the average ratio between the acceptable upper and lower limits of 97% and 71%.
*662 We deal first with a preliminary procedural point. Plaintiff contends the appeal is untimely as the Tax Court judgments were filed on June 26, 1984 and the notice of appeal was filed on November 9, 1984. See R. 2:4-1(a). We disagree. It is clear that the Freeze Act proceedings were an integral part of the case. Indeed plaintiff's attorney moved orally for application of the Freeze Act immediately following announcement of the judge's decision. Further, the proceedings regarding the Freeze Act were docketed for each property in each underlying case. In view of our numerous decisions indicating that judgments are final and appealable as of right only when final as to all issues and all parties, it would be extraordinary for us to accept plaintiff's procedural contention. See, e.g., Henderson v. Morristown Memorial Hosp., 198 N.J. Super. 418, 426 (App. Div. 1985); Nicholas v. Sugar Lo Co., 192 N.J. Super. 444, 450 (App.Div. 1983), certif. den. 96 N.J. 284 (1984); Delbridge v. Jann Holding Company, 164 N.J. Super. 506, 509-510 (App. Div. 1978). Thus we hold the appeal is timely as in the circumstances of this case there was no right to appeal until completion of the Freeze Act proceedings.
In holding the appeal to be timely we have not overlooked the fact that the Freeze Act itself, N.J.S.A. 54:51A-8, refers to a judgment by the Tax Court fixing the assessment as a "final judgment." But this characterization by the Legislature cannot control our determination of the procedural question of what is a final judgment for appeal purposes. We also recognize that in some cases the Freeze Act proceedings may be independent of the underlying action. See South Plainfield v. Kentile Floors, Inc., 92 N.J. 483, 485-486 (1983). We do not suggest that if a subsequent independent proceeding is brought to apply the Freeze Act a judgment in the underlying case involving the property will no longer be final.
Inasmuch as the appeal is properly before us, we reach the merits of the case. The review function of the county board of taxation and the Tax Court in real property assessment cases *663 was described by the Supreme Court in Pantasote Co. v. City of Passaic, 100 N.J. 408 (1985) as follows:
On appeal a municipality's original tax assessment is entitled to a presumption of validity. Riverview Gardens v. North Arlington Borough, 9 N.J. 167, 175 (1952); see Rodwood Gardens, Inc. v. Summit, 188 N.J. Super. 34, 38 (App.Div. 1982). The presumption attaches to the quantum of the tax assessment. Riverview Gardens, supra, 9 N.J. at 174. Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous. Id. The presumption in favor of the taxing authority can be rebutted only by cogent evidence, Riverview Gardens, 9 N.J. at 175, a proposition that has been long settled, e.g., Central R.R. Co. of N.J. v. State Tax Dept., 112 N.J.L. 5, 8 (E. & A. 1933); Estell v. Hawkens, 50 N.J.L. 122 (Sup.Ct. 1887). The strength of the presumption is exemplified by the nature of the evidence that is required to overcome it. That evidence must be `definite, positive and certain in quality and quantity to overcome the presumption.' Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105 (1952).
The Court in Aetna Life Ins. Co. explained the presumption in favor of an assessment and set forth the standard for the review of tax assessments.
The settled rule is that there is a presumption that an assessment made by the proper authority is correct and the burden of proof is on the taxpayer to show otherwise. L. Bamberger & Co. v. Division of Tax Appeals, [1 N.J. 151 (1948)]. And the taxpayer has not met this burden unless he has presented the appellate tribunal with sufficient competent evidence to overcome the presumption, that is, to establish a true valuation of the property at variance with the assessment. Riverview Gardens v. North Arlington Borough, 9 N.J. 167, 175 (1952). In other words, it is not sufficient for the taxpayer merely to introduce evidence: the presumption stands until sufficient competent evidence is adduced to prove a true valuation different from the assessment. Such evidence must be definite, positive and certain in quality and quantity to overcome the presumption. Central R.R. Co. of N.J. v. State Tax Dept., 112 N.J.L. 5, 8 (E. & A. 1933). 10 N.J. at 105].
It is clear that the presumption is not simply an evidentiary presumption serving only as a mechanism to allocate the burden of proof. It is, rather, a construct that expresses the view that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law. Powder Mill, I Assocs. v. Hamilton Tp., 3 N.J. Tax 439 (Tax Ct. 1981). [100 N.J. at 412-413].
Further, as we pointed out in Rodwood Gardens, Inc. v. Summit, 188 N.J. Super. 34, 38 (App.Div. 1982), only when the taxpayer overcomes the presumption that the assessment is correct "does it become incumbent upon the Tax Court to appraise the testimony, make a determination of true value and fix the assessment."
*664 Here the taxpayer did not overcome the presumption of correctness. Under the Condominium Act, N.J.S.A. 46:8B-1 et seq., it is provided:
Each unit shall constitute a separate parcel of real property which may be dealt with by the owner thereof in the same manner as is otherwise permitted by law for any other parcel of real property. [N.J.S.A. 46:8B-4].
All property taxes, special assessments and other charges imposed by any taxing authority shall be separately assessed against and collected on each unit as a single parcel, and not on the condominium property as a whole. Such taxes, assessments and charges shall constitute a lien only upon the unit and upon no other portion of the condominium property. All laws authorizing exemptions from taxation or deductions from tax bills shall be applicable to each individual unit to the same extent they are applicable to other separate property. [N.J.S.A. 46:8B-19].
We have recognized that the foregoing sections:
... [c]learly indicate a legislative design to treat each unit in a condominium as separate property and to accord each unit the same tax exemption applicable to other separate property. Thus viewed a condominium unit is for tax purposes an exclusive and separate unit despite the fact that by definition any condominium owner shares undivided interests in common with others. [Perth Amboy Gen'l Hospital v. Perth Amboy, 176 N.J. Super. 307, 312 (App.Div. 1980), certif. den. 87 N.J. 352 (1981)].
It is apparent that plaintiff's expert ignored the individual nature of the units and the assessments and instead treated the building as a single entity which he valued on an income basis, an approach adopted by the trial court. Indeed as we have pointed out the trial judge did not even attempt to assess individually each unit, instead leaving that function to the attorneys.
It is undisputed that plaintiff legally converted the building to condominium units and accordingly there should have been, as there was, a separate assessment for each unit. As we noted in Veltri v. Norwood, 195 N.J. Super. 406, 413 (App.Div. 1984), converting a building to condominiums can refer either to a change in the legal form of ownership or in the use of the building. As each unit was properly separately assessed, we hold that for purposes of valuation the change in legal form of ownership converted the structure to condominiums. But this change was ignored by plaintiff's expert who *665 valued the property as if it had not been converted. Thus plaintiff did not overcome the presumption the assessment was correct.
We recognize that the units are not selling. While that may be unfortunate for plaintiff, nevertheless it must bear the tax consequences of its voluntary business decision to convert the building, even if unwise. See General Trading Co. v. Taxation Div. Director, 83 N.J. 122 (1980). If we reached any other conclusion we would contravene the policy of this State to place condominium owners on the same legal basis, insofar as consistent with the special problems of condominiums, as other owners of real property. See AMN, Inc. v. So. Bruns. Tp. Rent Leveling Bd., 93 N.J. 518, 527-529 (1983). Further, in our view the fact that plaintiff owns all the units is not germane. We consider plaintiff as being the owner of 19 separate properties, a legal status it selected for itself.
In reaching our result we have not overlooked the possibility that an unconverted property may, upon the satisfaction of very strict criteria, be assessed reflecting its conversion potential to condominium ownership. See Americana Assocs. v. Bor. of Fort Lee, 202 N.J. Super. 92 (App.Div. 1985). But assessment of an undivided property with consideration of a potential use is not analogous to disregarding the legal status of a property.
Further, in deciding the case we recognize that in the absence of sales it may not be easy to determine the value of the units in the Hamilton Court. But we find that circumstance not to be germane for it is not unusual for property which is difficult to value to be assessed. See, e.g., Hackensack Water Company v. Borough of Old Tappan, 77 N.J. 208 (1978). Of course we do not advise the parties as to how the units should be assessed. Rather, we only hold that inasmuch as plaintiff has not overcome the presumption of correctness of the assessments, the judgments of the Tax Court cannot stand.
*666 The judgments of the Tax Court reversing the orders of the Bergen County Board of Taxation are reversed and the original assessments are reinstated. In view of our result, the appeal of the order applying the Freeze Act is moot and the order of October 5, 1984 and the judgments of November 29, 1984 are vacated.
NOTES
[1] The Tax Court judge indicated the assessments totaled $544,000. In light of the result we reach the difference in figures is not significant.
[2] It is not clear that the 19 cases were formally consolidated but all were in fact tried together.
[3] At oral argument we were told that no units have yet been sold.