HOPKINS, J.T.C.
Plaintiff requests the court to enter a judgment, pursuant to the provisions of N.J.S.A. 54:3-26, commonly referred to as the Freeze Act, which would require that the local property tax assessment for the tax year 1983 be made applicable to the tax year 1985 with a resulting decrease in the 1985 assessment by $1,000,000.
Both parties filed motions for summary judgment. Since there were factual disputes, the matter was set for trial.
The property involved is Block 22, Lot 1, in Union City. It was assessed for the tax year 1985 as follows:
Land $604,000
Improvements 3,096,000
Total $3,700,000
The 1983 assessment was the subject of a complaint, captioned Washington Park Urban Renewal v. Union City, Docket No. 09-10034A-83D, which was filed with the Tax Court on August 11, 1983, by the law firm of Brach, Eichler, Rosenberg, Silver, Bernstein & Hammer, wherein it was alleged that the 1983 assessment was excessive. The complaint was a direct appeal, pursuant to the provisions of N.J.S.A.. 54:3-21, since the assessment exceeded $750,000. On August 15, 1983, another complaint, captioned West Park Washington Corp. v. Union City, Docket No. 09-10047A-83D, was filed with the Tax Court requesting the same relief. This latter complaint was filed by Mandelbaum & Mandelbaum, the attorneys herein. The apparent reason for two complaints was that Washington Park Urban Renewal Corp. (Washington Park) had sold the property to West Park Washington Corp. (West Park) during 1983.
Pursuant to the provisions of N.J.S.A. 54:3-21, August 15 is the last day on which a petition contesting a local property tax assessment can be filed with a county board of taxation. However, as authorized by N.J.S.A. 54:3-21.4, the county board, upon receiving the approval of the Director, Division of Taxation, can extend the appeal period by 30 days when a taxpayer has failed to receive a tax bill by July 15. As so authorized, the *586 1983 appeal period to the Hudson County Board of Taxation was extended to September 15, 1983.
On August 26, 1983, subsequent to both appeals to the Tax Court, West Park filed a petition, contesting the same 1983 assessment, with the Hudson County Board of Taxation. Its attorney in that appeal was the same representative who filed the prior Tax Court complaint. He has testified that he did not have the income and expense statements, which are required to be attached to a county board petition, prior to that date. The county board scheduled the West Park appeal for hearing on October 20, 1983. That hearing date was adjourned to October 28, 1983.
On October 28, 1983, West Park was represented by Daniel D. Cronheim. Mary Manion appeared for Union City. Hugh McGuire, an experienced appraiser, the assessor for Union City, was also present and was the principal representative for Union City in the discussion with Cronheim. Neither party presented appraisals or other evidence of value before the county board. The testimony of Cronheim was that he appeared at the county board hearing as a substitute for Steven R. Irwin (Mandelbaum & Mandelbaum) in representing taxpayer. He further stated that he had been instructed to try the case and not to withdraw the appeal. The file he was given was basically the income and expense statement which had been attached to the complaint. He stated that he gave the income and expense statement to the board after he entered his appearance. He could not recall whether he had an expert available to testify, nor could he recall any conversation with McGuire. However, he admitted that he could have held such a discussion. McGuire testified that in his capacity as assessor, he was at the October 28 hearing and discussed the appeal with Cronheim. He stated that they were both aware that there were Tax Court appeals pending for the same year and property by two different plaintiffs, one of which was the county board petitioner. McGuire stated that there was no expert testimony since there was no trial. He further testified that he and Cronheim agreed to have the county board issue a judgment, as a matter of *587 convenience, so that the matter could be disposed of after it was determined who was the proper plaintiff in the Tax Court.
The county board issued a judgment which read as follows:
A duly verified petition of appeal having been filed with the Hudson County Board of Taxation and said appeal having been heard and considered, It is this day, Nov. 14, 1983, ORDERED that Judgment be as follows:
ORIGINAL
Land $604,000 $604,000
Improvements 2,096,000 2,096,000
Total $2,700,000 $2,700,000
JUDGMENT CODE # 0 [No change in assessment]
Neither party filed an appeal to the Tax Court from the county board judgment.
Under date of October 13, 1983, the attorneys for Washington Park, the former owner, sent a letter to the Clerk of the Tax Court withdrawing the complaint appealing the 1983 assessment. Copies of the judgment dismissing the complaint, based on such withdrawal, were sent by the Tax Court Clerk to the attorneys for Washington Park and to Herbert Fine, municipal attorney for Union City.
Under date of November 15, 1984, Mandelbaum & Mandelbaum, attorneys for West Park, advised the Clerk of the Tax Court that the complaint appealing the 1983 tax assessment was being withdrawn. Under date of December 7, 1984, a Tax Court judgment was entered which dismissed the complaint.
On March 19, 1986, plaintiff herein filed a Tax Court complaint seeking a judgment, pursuant to the provisions of the Freeze Act, N.J.S.A. 54:3-26, which would freeze the 1983 assessment of the subject property and make it applicable for 1985. That statute reads, in part, as follows:
Where no request for review is taken to the Tax Court to review the action or determination of the county board involving real property the judgment of the county board shall be conclusive and binding upon the municipal assessor and the taxing district for the assessment year, and for the 2 assessment years succeeding the assessment year, covered by the judgment, except as to changes *588 in value of the property occurring after the assessment date. Where such changes are alleged the petition of appeal shall specifically set forth the nature of the changes relied upon as the basis for such appeal. However, the conclusive and binding effect of such judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect.
There was no revaluation program of all real property in Union City during 1984. Accordingly, taxpayer contends that since the county board judgment for the tax year 1983 was on the merits, it was entitled to have its 1985 assessment conform to its 1983 assessment. In this respect, the exception to the application of the Freeze Act would not apply, since the county board judgment was not appealed and the taxing district did not file a timely appeal contesting the application of the Freeze Act to the 1985 assessment on the basis of a change in value from 1983. As to this exception, see Borough of Edgewater v. U.S. Life Realty Corp., 2 N.J.Tax 421 (Tax Ct. 1981), aff'd 4 N.J.Tax 531 (App.Div.1982) and Troy Village Realty Co. v. Springfield Tp. of Union County, 191 N.J.Super. 559, 468 A.2d 445 (App. Div.1983). Those cases hold that where an unappealed judgment predates the October 1 assessment date, the October 1 assessment is required to conform to the provisions of the Freeze Act. Further, if the Freeze Act is inapplicable because of the exception, the assessor is required to file an appeal with the county board by August 15 of the tax year in order to prove the exception.
Union City’s position is that the Freeze Act is inapplicable because the county board lacked subject matter jurisdiction to issue a binding judgment since the matter was pending in the Tax Court at the time the county board petition was filed as well as at the time the county board judgment was entered. Assuming subject matter jurisdiction in the county board, Union City alleges that the judgment affirming the assessment was an agreed judgment of “convenience” and not an “action or determination” sufficient to support a Freeze Act judgment for 1985 and, further, that taxpayer cannot now claim Freeze Act relief because of laches or delay. Taxpayer’s attorney candidly admitted, on brief, that taxpayer would have been ill-served to *589 request the Freeze Act relief prior to August 15, 1985, since it would have alerted the municipality to the possibility of an anti-Freeze Act complaint.
Whether the county board judgment issued with respect to the subject lot for the year 1983 has sufficient viability to support the application of the Freeze Act for 1985 depends, initially, on the county board’s subject matter jurisdiction over the 1983 tax year assessment. That, in turn, rests upon the interpretation given to N.J.S.A. 54:3-21, which reads as follows:
A taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other property in the county, or a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county, may, on or before August 15, appeal to the county board of taxation by filing with it a petition of appeal; provided, however, that any such taxpayer or taxing district may, on or before August 15, file a complaint directly with the tax court, if the assessed valuation of the property subject to the appeal exceeds $750,000.00, and any party to an appeal pending on July 1,1979 before a county board of taxation in which the assessed valuation of the property involved exceeds $750,000.00 shall be entitled, upon application to the county board, to have the appeal transferred to the tax court by the county board. All appeals to the tax court hereunder shall be in accordance with the provisions of the State Tax Uniform Procedure Law, R.S. 54:48-1 et seq. [Emphasis supplied]
The underscored portion of N.J.S.A. 54:3-21 was added by L. 1979, c.113 at 313, effective July 1, 1979, as a companion bill to N.J.S.A. 2A:3A-1 et seq., which established the Tax Court. N.J.S.A. 2A:3A-3 authorized the Tax Court to “hear and determine all tax appeals of such character as now are taken to, and heard and determined by, the Division of Tax Appeals in the Department of the Treasury.” Prior to the creation of the Tax Court, a county board judgment could be appealed only to the Division of Tax Appeals.
In creating the Tax Court pursuant to N.J. Const. (1947), Art. YI, § 1, par. 1, the Legislature created a court that became part of the judicial branch of government. It is against that background that it is necessary to analyze the legislation authorizing direct Tax Court appeals, bypassing county boards of taxation, in cases where the assessment exceeds $750,000.
*590 It is well recognized that a change in language in a statute ordinarily implies a purposeful alteration in substance. Cold Indian Springs Corp. v. Ocean Tp., 154 NJ.Supér. 75, 95, 380 A. 2d 1178 (App.Div.1977). Further, if a statute is to make sense, it must be read in the light of some assumed purpose. A statute, merely declaring a rule, with no purpose or objective, is nonsense. Llewellyn, “Remarks on the Theory of Appellate Decision and the Rules or Canons about how Statutes are to be Construed,” 3 Vand.L.Rev. 395 (1950).
N.J.S.A. 54:3-21 was amended to coincide with the creation of the Tax Court. The Tax Court was given subject matter jurisdiction to hear appeals from county board judgments as well as direct appeals from assessments exceeding $750,000. Taxpayer heiein argues that such direct appeal option was in addition to its right to simultaneously pursue an appeal to the county board.
Both the creation of the Tax Court and the grant of direct appeal authority for certain assessments were part of the same legislative scheme. One of its purposes was to expedite the disposition of a large number of pending tax appeals. Further, there was a desire to expedite the appeal process. Such were the purposes and objectives of the legislation.
The initial legislation providing for direct appeals to the Tax Court was conditionally vetoed by Governor Byrne. The bill, at that time, did not contain any cutoff date on the ability to transfer an appeal from the county board to the Tax Court. In his message to the Legislature, the Governor stated in part, as follows:
While I support the concept of the legislation, several amendments are needed.
Further, the bill states that “an appeal pending” before a county board of taxation may be transferred to the tax court. Some confusion could occur about when the appeal is considered “pending” to enable such a transfer to take place. I am recommending an amendment to make clear that this provision applies to matters pending on the effective date of this act, July 1, 1979.
In compliance with the Governor’s recommendation, the legislation was amended to provide that only those cases pending *591 with the county board on July 1, 1979 could be transferred to the Tax Court.
Both the Governor’s message and the legislation use the word “appeals” in the same sense, namely, a controversy over the amount of the assessment. Accordingly, if a taxpayer filed an appeal with the county board after July 1, 1979, such taxpayer had no right to transfer it to the Tax Court, even though the assessment exceeded $750,000. The use of the words “appeal” and “transferred” in the legislation is a clear indication that the object of the legislation was to give qualifying taxpayers the option of bypassing the county board and of going directly to the Tax Court. If they initially chose the county board after July 1, 1979, they had exercised their option and could only go to the Tax Court by appealing the county board judgment.
As previously noted, a statute declaring a rule, with no purpose or objective, is nonsense. The transfer cutoff date was intended to permit those who had filed petitions with the county board prior to the legislation authorizing direct appeals, the opportunity to transfer to the Tax Court. Any party who filed a county board petition after July 1, 1979, was deemed to have made his election to be heard at the county board. This evidences an intent to preclude the controversy from being heard in both places at the same time. Accordingly, an appeal to the Tax Court effectively bypasses county board jurisdiction.
Taxpayer’s dual subject matter jurisdiction contention is not only inconsistent with the statute; its absurdity is apparent when one considers that the Tax Court is the court of appeal from county board judgments. In Tax Court appeals, both assessments and county board judgments are entitled to a presumption of correctness. Pantasote Co. v. Passaic City, 100 N.J. 408, 413, 495 A.2d 1308 (1985); Riverview Gardens v. North Arlington Boro., 9 N.J. 167, 174-175, 87 A.2d 425 (1982). If dual subject matter jurisdiction were allowed, the Tax Court could be faced with a county board judgment for a different *592 amount than the assessment. Yet they would both be presumed to be correct.
Taxpayer has referred to W.C.I. Westinghouse v. Edison, 7 N.J.Tax 610 (Tax Ct. 1985), aff’d (App.Div.1986), wherein the Tax Court entertained jurisdiction in a case in which the taxpayer filed a direct appeal with the Tax Court while the township filed an appeal with the county board. The county board affirmed the assessment and the county board’s judgment was appealed to the Tax Court by the township. The appeals were consolidated. The parties understood that taxpayer, who had taken the direct appeal, was designated plaintiff and the township was designated defendant. Both parties understood that they each had the burden of proving their affirmative case. The court found that both parties failed to sustain their burdens and both complaints were dismissed.
The issue now under review was not presented to the court by the parties since there was no question as to the Tax Court’s jurisdiction and, further, since the county board judgment affirmed the assessment, both parties had the burden of overcoming that one amount. As such, that case has no precedental value in the present matter.
Taxpayer’s reliance on correspondence to the Tax Court Clerk’s Office from the Hudson County Board of Taxation acknowledging advice to hear county board tax appeals when Tax Court complaints were also filed, is not inconsistent with this opinion if the Tax Court complaints were filed subsequent to the county board petitions, a fact not shown by such correspondence.
It is also important to note that the Tax Court is part of the judicial system and is vested with judicial power. Weisbrod v. Springfield Tp., 1 N.J.Tax 583 (1980). The organic law of New Jersey provides that:
The powers of government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers, properly belonging to either of the others, except as expressly provided in this constitution. [N.J. Const. (1947), Art. 3, par. 1.]
*593 Taxpayer’s proposed dual subject matter jurisdiction argument requires a finding that both a legislative board and a judicial court could be simultaneously exercising review powers over the same disputed tax assessment. It is well established that a statute will be construed to avoid constitutional defects. Matter of Board of Educ. of Town of Boonton, 99 N.J. 523, 494 A.2d 279 (1985).
This court concludes that a timely Tax Court complaint deprives a county board from subsequently obtaining subject matter jurisdiction over a disputed assessment. As such, the county board judgment upon which taxpayer relies is a nullity and cannot be the basis for a Freeze Act adjustment to the 1985 assessment.
In view of the above, it is unnecessary to consider Union City’s other defenses.
The Clerk of the Tax Court will enter a judgment dismissing the complaint.